**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David DORAN, Dominick Abbrescia, Julius Grieco, and Joseph A. LoCelso, Defendants-Appellants.**

**No. 13094.**

United States Court of Appeals Seventh Circuit.

Jan. 11, 1962.

Rehearing Denied March 7, 1962 (Doran).

Rehearings Denied En Banc March 26, 1962 (Grieco and LoCelso).

512

Julius L. Echeles, Frank W. Oliver, Melvin B. Lewis, Chicago, Ill., for appellant.

James P. O'Brien, U. S. Atty., Paul D. Keller and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

The defendants Abbrescia, Doran, and Grieco have appealed from judgments on verdicts finding them guilty of conspiracy to use the mails in a scheme to defraud[1] and of unlawfully causing the transportation in interstate commerce of forged or falsely altered securities.[2] LoCelso appeals from the judgment on the verdict finding him guilty of

[1] 18 U.S.C. § 1341. "Frauds and swindles. Whoever, having devised or intending to devise any scheme * * * to defraud, or for obtaining money * * * by means of false or fraudulent pretenses, representations, * * * or procure for unlawful use any counterfeit or spurious * * * security * * *, for the purpose of executing such scheme * * or attempting so to do, places in any * * * authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department * * * or knowingly causes to be delivered by mail according to the direction thereon * * * any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[2] 18 U.S.C. § 2314. "Transportation of stolen goods, securities, monies, or articles used in counterfeiting.
* * * * * *
"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited; * * *
"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

the conspiracy. Abbrescia was sentenced to prison for ten years, Doran for twenty-five years, Grieco for fifteen years, and LoCelso for two years.

There is ample proof of the unlawful scheme in detail: Cab drivers would seek out nightlife-bound visitors in Chicago and drive them to the Show Lounge. There they would be drawn into the net of an unlawful scheme by companionable female employees of the Lounge. The unlawful aim of these companions was to exhaust the cash reserves of the victims and aid in inducing, as quickly as possible, drunkenness by means of frequent or spiked drinks. Once out of cash, the victims were induced to sign checks already "made." Once written, the checks were used as models for tracing forged copies. The copies were then used in various ruses to induce the writing of additional or substitute checks. First endorsements were generally fictitious to give the appearance of genuineness and to conceal the culprits. The checks were negotiated to persons like Grieco, and institutions like the 24-hour Shopping Center, having bank accounts. The checks were deposited in the accounts and thus placed in channels which led to the mails and eventually to the drawee banks in Illinois and other states.

LoCelso was a cab driver; Grieco owner of the 24-hour Shopping Center, whose bank account and his own were at the Merchants National Bank in Chicago; Abbrescia was manager of the Lounge and Doran his assistant.[3] They were convicted under the conspiracy Counts One, Two, and Six. None of them testified at the trial.

Abbrescia and Grieco were sentenced to five years, and LoCelso to two years, on each count, the sentences to run concurrently. Doran was sentenced to five years on each count, the sentences to be served consecutively.

■ The defendants claim that the evidence does not support the jury's verdicts as to these counts.

The first question is, therefore, whether there is substantial evidence, taking the view most favorable to the Government, to support the verdicts. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1941); United States v. Maroy, 7 Cir., 248 F.2d 663, 665, cert. denied, 355 U.S. 931, 78 S.Ct. 412, 2 L. Ed.2d 414 (1957).

The evidence and inferences favorable to the Government, United States v. Green, 7 Cir., 246 F.2d 155, 157, cert. denied, 355 U.S. 871, 78 S.Ct. 122, 2 L.Ed.2d 76 (1957), in proof of defendants' participation in the conspiracy are: LoCelso was one of the cab drivers who brought victims to the Show Lounge. He shared in the division of a percentage of the proceeds of the unlawful conspiracy. He would "half drag and half stagger" the victims to a cab for return to their hotel or "some place." He drove victim McDonald to the Show Lounge, presented him to Abbrescia, and McDonald was defrauded. He also drove victim Siehl to the Lounge and later to a brothel. He received a "gratuity" from Siehl of a $350 check which he deposited with a cab company credit union and later withdrew.

Also: Grieco owned the 24-hour Shopping Center and the Show Lounge. The first fraudulent check taken was of victim Bardin, dated September 21, 1956, drawn on a North Carolina bank. It was endorsed by Shopping Center and deposited in its account with Merchants National Bank of Chicago, where Grieco also had his personal account No. 20284. The check was not paid by the drawee and was returned "Payment Refused Amount Altered." Merchants National debited Shopping Center's account accordingly and notified it of the dishonor of the Bardin check.

And: Subsequently, victim Wyman's check, dated December 4, 1956, subject of Count One, was taken. It was "made" in printing similar to Doran's and drawn against the Goodwine State Bank of

---

3. Defendants Harris and Schulman have not appealed; DiDomenico died pending ■ trial; and Korbos was dismissed before trial.

Potomac, Illinois. It bears the endorsements "Jack Johnson; Shopping Center; J. Grieco, 2946 W. Madison; Merchants." Grieco wrote his endorsement. The check was received by the Goodwine bank and returned dishonored. It had not been put through a "bad check" detecting device that Shopping Center had had installed which photographs checks and presenters of checks. The device was installed under a contract indemnifying Shopping Center against loss from "bad checks." The contract required all Shopping Center's checks to be processed.

The jury could reasonably conclude from the evidence and inferences in the record that Abbrescia and LoCelso were members of the unlawful scheme of which Wyman was a victim: and that Doran "made" the fraudulent Wyman check and that the first endorser was fictitious.

■■ Once shown to be a part of the conspiracy, Grieco is responsible "for all that may be or has been done." Poliafico v. United States, 6 Cir., 237 F.2d 97, 104, cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1956). His participation need not have been shown by direct evidence. Ibid. Since a check drawn on a New Jersey bank was returned dishonored in eighteen days, the jury could reasonably infer that the Bardin check was returned from the North Carolina bank, and Shopping Center notified, within the eighty-one days before the Wyman check was written. And it could conclude that Grieco, as owner of the Shopping Center, knew of notice of the returned Bardin check and with that guilty knowledge endorsed the Wyman check.

■■ Venue was proved with respect to the Wyman check. It was made in Chicago, deposited in a conspirator's account in Chicago, mailed in Chicago and returned in the mail to Chicago. There was proof of defendants' mailing the check. Evidence of the ordinary course of banking business and Post Office Department customs was substantial proof of the mailing, Decker v. United States, 4 Cir., 140 F.2d 378, 379, cert. denied,

321 U.S. 792, 64 S.Ct. 791, 88 L.Ed. 1082 (1944), and Grieco's business experience and consequent knowledge of ordinary banking practice was enough to show he caused the mailing. United States v. Sheridan, 329 U.S. 379, 391, 67 S.Ct. 332, 91 L.Ed. 359 (1946).

■ The verdict was justified on Count One. Because their sentences on Counts One, Two and Six are concurrent, and the verdict against Abbrescia, Grieco and LoCelso is justified on Count One, we need not consider the other two counts against them. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Roviaro v. United States, 353 U.S. 53, 59 n. 6, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1956); United States v. Sheridan, 329 U.S. 379, 381, 67 S.Ct. 332, 91 L.Ed. 359 (1946).

Count Two involved a check of H. L. Smith. There was comparative evidence from which the jury could find that Doran, who wrote the victim Bynum's check (subject of Count Thirty-nine), also wrote the Smith check. Count Six involved a copy of a collection form representing a check of victim Garland, drawn by the "manager" of the Lounge. There was evidence that the check involved in this count was presented by Doran to a currency exchange for collection, that at the time he represented that it was from the Lounge, and expected the concealment of this fact. We conclude that the evidence and inferences support the verdicts against Doran on Counts Two and Six as well as on Count One.

Abbrescia, Doran and Grieco were each convicted on substantive Counts Thirty-nine and Forty. Grieco was sentenced to ten years' imprisonment, Abbrescia to five years, and Doran to ten years, on each count, the sentences to run concurrently.

Count Thirty-nine charges Abbrescia, Doran and Grieco caused a falsely altered check of victim Bynum to be transported in interstate commerce with fraudulent intent, knowing it to have been falsely altered.

Bynum testified that he signed a check on the First National Bank of Hudson,

Ohio for $25.00 and that it had been raised to $125.00. There was some contrariety in this witness's testimony with respect to the details of what transpired the night the check was signed. This is understandable in light of the testimony of the scheme. We think, however, there is sufficient evidence, including the check itself, to show that the check was falsely altered.

There is evidence from which the jury could reasonably infer that Doran printed the Bynum check, Exhibit 39. It bears the endorsements "Dominick Abbrescia" and "J. Grieco 20284." It also bears the endorsements of the Merchants National Bank and Federal Reserve Bank of Chicago. There is evidence of fingerprints and comparisons of handwriting from which the jury could reasonably infer that Abbrescia wrote his endorsement, and from comparison of handwriting that Grieco wrote his. There is evidence from which the jury could reasonably infer that Abbrescia, Doran and Grieco caused the check to be transported from Chicago, Illinois to Hudson, Ohio.

This substantial evidence supports their convictions on Count Thirty-nine. We need not, therefore, consider Count Forty, since the sentences are concurrent. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Roviaro v. United States, 353 U.S. 53, 59 n. 6, 77 S.Ct. 623, 1 L.Ed.2d 639 (1956); United States v. Sheridan, 329 U.S. 379, 381, 67 S.Ct. 332, 91 L.Ed. 359 (1946).

■ This evidence does not include statements of Grieco's co-conspirators and his conviction does not offend the rules in Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1959). He was charged as a principal in Count Thirty-nine. The jury could reasonably have inferred that Grieco, when he endorsed the Bynum check, knew

it was falsely altered, would be put in the mail and be forwarded by Merchants National Bank in interstate commerce to the drawee bank. These would be sufficient to support the finding that he "caused" the mailing, United States v. Sheridan, 329 U.S. 379, 391, 67 S.Ct. 332, 91 L.Ed. 359 (1946), citing Kann v. United States, 323 U.S. 88, 93, 65 S.Ct. 148, 89 L.Ed. 88 (1944), and was a principal in the unlawful enterprise.

■ No error was committed in the giving of instructions. The facts here are different from those in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) and the instruction there is inapplicable here. Grieco was indicted in Count Thirty-nine as principal. And although the trial court here omitted the word "altered" at one place in reading the definition of the offense in Count Thirty-nine, other instructions explained the offense and prevented error.

■ We find no merit in the contention that Abbrescia and Doran were denied a fair trial. The testimony that Doran was arrested in a brothel was neutralized by the abundance of kindred testimony. There was evidence seized in the brothel, and no showing that it was not seized in a search incidental to a lawful arrest. We see no error in its admission.

■ There is no ground for complaint about notations on Exhibit 961b.[4] Defendant stipulated with respect to it and had an opportunity to inspect it with other exhibits, and no objection was made to its going to the jury.

We have discussed the points that need consideration. No prejudicial error is shown. There is substantial evidence to support the verdicts of guilty on conspiracy Counts One, Two, Six, and substantive Count Thirty-nine.

For the reasons given, the judgment is affirmed.

---

4. Exhibits 961a and 961b are photographs of the reverse sides, stapled together, of a standard FBI fingerprint form. Notations on 961b included "Charge or Offense * * * ITSP & Mail Fraud,"

"Send Copy U. S. Probation Office," and "Wanted by Bureau." 961a was offered to prove Abbrescia's handling of fraudulent checks. 961b was not offered.