**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alex MICELE, Defendant-Appellant.**

**UNITED STATES of America,**

v.

**Plaintiff-Appellee,**

**Louis GUIDO, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John C. PELLEGRINI, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas McGARRY, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Albert SAKAL, Defendant-Appellant.**

**Nos. 14145–14149.**

United States Court of Appeals
Seventh Circuit.

Jan. 8, 1964.

Rehearings Denied in Nos. 14145–14147 and 14149, Jan. 31, 1964.

Rehearings Denied En Banc in Nos. 14145–14147, Jan. 31, 1964.

As Modified March 31, 1964.

Stephen Levy, Julius Lucius Echeles, Barry Goodman, Douglas Flood, Jerome Rotenberg, Chicago, Ill., for appellants.

Frank E. McDonald, U. S. Atty., John Powers Crowley, Asst. U. S. Atty., Chicago, Ill., James P. O'Brien, U. S. Atty. (John Peter Lulinski, Asst. U. S. Atty., of counsel), for the United States.

Before KNOCH, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

These five appeals arise from the same trial by jury under an indictment of nineteen counts, the first charging conspiracy,[1] and the balance charging substantive offenses, in violation of narcotics laws.

The conspiracy count named these five defendants, fourteen other defendant co-conspirators, and fourteen non-defendant co-conspirators, and alleged the conspiracy lasted from the summer of 1960 through 1962. Louis Guido and Albert Sakal[2] were named in the conspiracy count only; Alex Micele, John Pellegrini and Thomas McGarry were named in the conspiracy count and one or more substantive counts. All were found guilty of the various charges against them except that Pellegrini was found not guilty of the substantive offense charged against him.

For sake of convenience, we shall treat as one each question common to each appeal.

Micele, Guido, Sakal and McGarry contend there is insufficient evidence to support their convictions under the conspiracy. Taking the evidence in the light most favorable to the government, as we are required to do, United States v. Glasser, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L.Ed. 680 (1942), there is evidence showing that Micele with Louis Vaselli agreed to furnish narcotics to Albert Spagnolia, and that they did so; that Micele with Anthony D'Agostino discussed with Frank Milazzo an opportunity to "pass the stuff" and both took him to meet Guido; that Micele passed narcotics to Milazzo for Pellegrini; that Guido told Milazzo that Micele and D'Agostino owed him money and later Micele left money at a night club for Guido; that Guido indicated to Milazzo that Micele and Guido were partners; that Vaselli and Guido met several times in Guido's apartment; that Nick Guido's wife heard him tell Louis Guido that the latter made money with Vaselli in the "narcotics racket;" and that Micele, Pellegrini and Milazzo were arrested in the apartment building where Guido lived as they were returning narcotics which customers claimed were of poor quality.

There is other evidence showing that Vaselli and Joe Gaynor sold narcotics to Sakal; that they tested narcotics in Sakal's apartment, used by addicts; that

1. In violation of 21 U.S.C. § 174.

2. The indictment named Sakal as "Al Sacko."

these addicts were Sakal's market for distribution; and that Sakal and his roommate would be able to do a good business.

There is evidence of Vaselli leaving a package of white powder on a window sill, McGarry giving Vaselli money and picking up the package; of Stanley Miller's selling narcotics to McGarry; and of McGarry selling narcotics to a government agent.

We conclude that there is sufficient evidence to support the convictions under the conspiracy count. We see no necessity of discussing cases that went off on grounds of "mere suspicion," "mere association," "mere knowledge, approval of or acquiescence in" the goals of the conspiracy. They have no application here. The evidence amply justified an inference that each of the defendants knew of the conspiracy and associated themselves with it. United States v. Aviles, 274 F. 2d 179, 189–90 (2d Cir. 1960), cert. denied, 362 U.S. 974, 80 S.Ct. 1057, 4 L. Ed.2d 1009; Nye & Nissen v. United States, 168 F.2d 846, 852 (9th Cir. 1948).

■ We see no merit in the contention that the defendants were prejudicially misjoined in Count One. We do not agree that the proof showed two conspiracies with some of the defendants participating in but one, and that they were accordingly harmed by the evidence of the other conspiracy. The testimony showed what might be called a north side group—Guido, Vaselli, Micele—and a south side group—Vaselli, Gaynor—in the distribution of narcotics. It is true that Guido's and Pellegrini's names appear only in the north side distribution process and there is no testimony that they knew the members of the south side group or vice versa, or had any connection with them other than through Vaselli and to some extent Gaynor. But that is not fatal to the joinder. United States v. Carminati, 247 F.2d 640, 644 (2d Cir. 1957), cert. denied, 355 U.S. 883, 78 S. Ct. 150, 2 L.Ed.2d 113, United States v. Cohen, 197 F.2d 26, 29 (3d Cir. 1952).

The integrated distribution structure, shown by the testimony, did not preclude the inference that those separated from each other at lower levels, as Pellegrini, Sakal and McGarry were, knew the common source of the narcotics at the top, Vaselli and Guido. It was a single-structured conspiracy, and Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), does not apply. It is unimportant that the proof as to those at lower levels does not carry them to the conspiracy's end. United States v. Stromberg, 268 F.2d 256, 264 (2d Cir. 1959), cert. denied, 361 U.S. 863, 868, 80 S.Ct. 119, 4 L.Ed.2d 102.

■ For these reasons we think the court did not err in denying severance as to Guido, Pellegrini and Micele. Since there is no merit to the contention of misjoinder of the conspiracy count, the court did not err in instructing the jury to consider the testimony of all witnesses, with certain exceptions, against all defendants.

■ We see no merit either in Pellegrini's contention that he was prejudiced by the court's denial of his motion for a severance because he was not named with any other defendant in a substantive count against him and was compelled to stand trial with other defendants.

■ And we see no merit in the claim of McGarry's "entrapment." The evidence plainly refutes his claim that the seed of his offense was planted in his mind, and that he was an otherwise innocent person.

■ Pellegrini, Micele and Guido claim error in denial of their motions for bills of particulars. The motions were addressed to the district court's discretion, United States v. Holovachka, 314 F.2d 345, 349 (7th Cir. 1963), cert. denied, 374 U.S. 809, 83 S.Ct. 1695, 10 L. Ed.2d 1033, and we have not been shown any abuse of discretion in the court's ruling. The court could with reason have concluded the motions called "for too much details of evidence," Wong Taï v. United States, 273 U.S. 77, 82, 47 S.Ct.

300, 71 L.Ed. 545 (1927). Based on our inspecting the indictment, we conclude that defendants were sufficiently "apprised of the nature of the offense charged" against them, and there was probably "no danger of a violation of the principles of double jeopardy." United States v. Garfoli, 324 F.2d 909 (7th Cir. 1963).

During the cross-examination of Milazzo, attorney for Guido asked him whether he had not been a partner in robberies with Micele. The court repeatedly sustained objections with repeated caution to Guido's attorney who seemed bent upon producing error, or trying to save Guido by attempting to impeach Milazzo at Micele's expense. United States v. Cohen, 124 F.2d 164, 166 (2d Cir. 1941). We cannot say the incident was reversibly erroneous. *Ibid.*

Guido, and Pellegrini adopting Guido's argument, claim prejudice through unfair publicity arising from the extensive newspaper publicity about a notorious trial of his brother, Nick, in a state court contemporaneously with the trial in the case before us; and because of the participation by Nick's wife, Mrs. Pat Guido, in Nick's trial and this one. The district court admonished and cautioned the jury at each noon recess and at the close of each day's session against reading or looking at newspapers, listening to the radio or television, or looking at television, or discussing the case with each other or with others. On the day following what seems to be the most prominent publicity of his brother's conviction, Louis Guido moved for an *in camera* examination of each juror. The court denied the motion but gave a thorough cautionary instruction to, and examination of, the jury *en banc*. Since the publicity was not about Louis Guido nor of his trial, and since the district court's admonitions satisfied the requirements for a fair trial under the "special facts" of this case, there is no merit in this claim and United States v. Accardo, 298 F.2d 133 (7th Cir. 1962) does not apply.

Guido also claims error in the court's limitation of cross-examination of Mrs. Pat Guido with respect to her employment and to money she testified seeing exchanged between Nick and Louis Guido. We have examined the direct and cross-examinations of this witness and see no abuse of discretion in the court's limitation of the cross-examination. The limited cross-examination was sufficient basis for an estimate of the witness and her credibility; and unless the limitation was imposed, the cross-examination would have included improper impeaching questions that could have led to seriously diverting rebuttal testimony.

Micele, Guido and Pellegrini claim prejudice in the district court's failure to instruct the jury properly upon the testimony of accomplice Milazzo. The instruction proffered, and refused, was:

> "where an accomplice is also an admitted felon—you must treat this testimony with even greater suspicion, and you must act upon it with even greater hesitation."

The pertinent instruction given was:

> " * * * the testimony of an accomplice witness, is to be received with caution, and weighed with great care."

The given instruction is not altogether as strict as the court in Crawford v. United States, 212 U.S. 183, 204, 29 S.Ct. 260, 53 L.Ed. 465 (1909), implies an instruction under such circumstances ought to be. On the other hand it does not fall so short of the mark as to be reversible error because on the whole record we are not of the opinion that the failure to give the proffered instruction prejudiced defendants. Id. 212 U.S. at 204, 29 S.Ct. 260, 53 L.Ed. 465.

During the trial motions were made for an *in camera* examination of the grand jury testimony for inconsistencies in the testimony of prosecution witnesses Milazzo and Miller before the grand jury and at the trial, and the gov-

ernment offered the minutes of the grand jury testimony for *in camera* inspection. The motions were denied. Because a stricken answer of Milazzo indicated possible inconsistencies, and because he and Miller were main prosecution witnesses, and accomplices and felons, we thought a sufficient "particularized need" had been demonstrated so that the court should make an *in camera* examination of the grand jury testimony for the "inconsistencies" which defendants argued were probably in that testimony. Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399, 79 S.Ct. 1237, 3 L.Ed. 2d 1323 (1960), United States v. Nassar, 301 F.2d 243, 245 (7th Cir. 1962), United States v. Magin, 280 F.2d 74, 79 (7th Cir. 1960).

Accordingly, following United States v. Santore, 290 F.2d 51, 67 (2d Cir. 1960), we ordered the trial judge to examine the grand jury testimony *in camera* and to certify to us: (1) whether there were inconsistencies in the testimony of Milazzo and Miller, and if so (2) whether they were material; and to transmit to us the grand jury testimony. The judge has transmitted, *sealed,* the grand jury testimony to us with his certificate that he has examined the grand jury testimony and compared it with the transcript of the trial testimony and written statements of the witnesses produced at the trial; and that there were no material inconsistencies.

We have read the grand jury testimony of Milazzo and Miller and agree with the trial judge that no material inconsistencies appear. Their testimony at the trial may be more expansive, but on the whole we see no inconsistencies, and we cannot see that denial of *in camera* examination and use of the grand jury testimony to impeach was prejudicial.

■■■ Since the sentences of Micele's convictions on the two substantive counts are to run concurrently with his sentence on the conspiracy count, and since his

conviction is justified on the conspiracy count, we need not consider the contentions he raises as to the substantive counts. United States v. Doran, 299 F. 2d 511, 514 (7th Cir. 1962).

For all the reasons given, the judgments are affirmed.[3]

---

3. This court appointed Attorneys Douglas Flood and Jerome Rotenberg, both of the Chicago Bar, to represent appellants McGarry and Sakal before this court. We express our appreciation of Messrs. Flood and Rotenberg for their outstanding service in these assignments.