UNITED STATES of America,
Plaintiff-Appellee,

v.

Edgar F. SMITH, Defendant-Appellant.

No. 14322.

United States Court of Appeals
Seventh Circuit.

Aug. 14, 1964.

Rehearing Denied Sept. 10, 1964.

Mozart G. Ratner, Washington, D. C., Harold Gruenberg, Gruenberg, Schobel & Souders, St. Louis, Mo., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Joseph M. Howard, Atty., Tax Division, Dept. of Justice, Washington, D. C., Edward R. Phelps, U. S. Atty., Springfield, Ill., Lee A. Jackson, Norman Sepenuk,

**900**

Attys., Dept. of Justice, Washington, D. C., for appellee.

Before DUFFY, KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

Edgar Smith, a Vice-President of the International Hod Carriers' Building and Common Laborers' Union of America, and a Regional Director for several midwestern states, appeals from his conviction for income·tax evasion in the years 1951, 1952 and 1953. He was sentenced to four years imprisonment and fined $5,000 on each count of a three count indictment, the sentences to run concurrently. We affirm the conviction.

■ We must take the evidence most favorable to the Government in determining whether there is sufficient evidence to support the jury's verdict, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), United States v. Accardo, 298 F.2d 133 (7th Cir. 1962), and resolve evidentiary conflicts in the Government's favor. United States v. Carter, 326 F.2d 351, 352 (7th Cir. 1963).

There was testimony that Smith attended a meeting of contractors and labor leaders to discuss reducing payoffs, for labor peace, from 1½% to 1% of contract terms; that the discussion resulted in an agreement accordingly; and that thereafter pursuant to the agreement, and a previous agreement between Dale and Smith, twenty-three contractors made payments over the three years in question to either John Haywood or Evan Dale, both business representatives of autonomous district councils of the Union in southern Illinois.

Haywood testified that Smith told him in 1948 he was going to "revive a percentage deal * * * with the contractors;" that Smith instructed him to arrange a meeting with John Dippold, a contractor, and other contractors; that at the meeting the "percentage deal" was discussed and Smith took part in the discussion; that Haywood was appointed to receive the payoffs; that one-third of the payoffs would go to the Hod Carriers' and Laborers' Union, split evenly between Smith and Haywood; and that he made payments to Smith of the payoffs he received from the contractors in 1951 and 1952.

Dale testified that he and Smith discussed the "mechanics of the collections, the whole procedure" including the division of the payoff to which Haywood testified; that they discussed the avoidance of reporting as income the amounts received from the contractors; and that he paid Smith "at least one third" of payoffs collected in 1951, 1952 and 1953.

■ We need not detail testimony of all payoffs and payments to Smith, since there is no claim that the amounts testified to were not the amounts charged in the indictment. We conclude there is substantial testimony to support a finding of Smith's participation in, and approval of, the payoff plan and that he received money in 1952 and 1953 upon which he wilfully sought to evade taxes.

■ This conclusion disposes of Smith's contention of violation of due process in the pre-trial Proceedings Before the Commissioner,[1] Rule 5, Fed.R. Cr.P., because even if the contention is valid, which we do not decide, the result would affect only the 1951 tax evasion count. The pre-trial proceedings were based on a complaint filed February 21, 1958, to toll the six-year statute of limitations bar on February 26, 1958, against prosecution for the alleged 1951 offense. We do not see how Counts II and III of the indictment, which allege income tax evasion for the years 1952 and 1953, returned five months after the preliminary hearing, can be said to have been affected by what transpired before the Commissioner and the later events pertaining to that proceeding. We agree that the three counts might be said to

---

1. The district court denied Smith's motion to dismiss the indictment on the due process claim. Smith sought mandamus, in this court, to compel granting of the motion. We denied the petition, and the Supreme Court denied certiorari. Smith v. Mercer, 372 U.S. 914, 83 S.Ct. 727, 9 L.Ed.2d 721 (1963).

pertain to a "continuing course of illegal conduct," in the sense that the intention was to avoid taxes so long as payoffs continued, but in a criminal tax evasion case each year stands alone, and the failure to pay taxes in each of the years involved constitutes a separate offense. United States v. Johnson, 123 F.2d 111, 119 (7th Cir. 1941), reversed on other grounds, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1942). Since the sentences were concurrent, if the record sustains Smith's conviction on either the 1952 or 1953 count, the judgment must be affirmed. United States v. Doran, 299 F.2d 511 (7th Cir. 1962), cert. denied, 370 U.S. 925, 82 S.Ct. 1563, 8 L.Ed.2d 504, United States v. Tenenbaum, 327 F.2d 210, 211 (7th Cir. 1964), cert. denied 377 U.S. 905, 84 S.Ct. 1165, 12 L.Ed.2d 177 (1964).

██ The claim that Smith was deprived of his right to prepare his defense because of the district court's denial of his motion for a bill of particulars is without merit. The motion was addressed to the court's discretion, and we have not been shown any abuse of discretion in the court's ruling. United State v. Micele, 327 F.2d 222, 225 (7th Cir. 1964), cert. denied, 84 S.Ct. 1628 (June 1, 1964, No. 883, Oct. 1963 Term).

██ Smith argues that Haywood and Dale are tainted witnesses and "discredited * * * as a matter of law" because of previous "perjury", and that the evidentiary foundation of the case is therefore removed. He relies upon Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), and Communist Party v. Subversive Activities Control Board, 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003 (1956), to support his theory. The cases are not helpful to him. In these cases the issues of falsehoods were not before the triers of fact, and the cases were remanded. In the case at bar, the jury heard the testimony of both Dale and Haywood that they had denied previously that they had received payments from contractors, and heard their testimony at the trial that they had received the payments; and the jury was instructed that "A witness may be discredited or impeached * * * by evidence that at another time the witness has made statements inconsistent with the witness's present testimony." Thus the issue was squarely before the jury. That is all the Supreme Court required in the Mesarosh and Communist Party cases.

██ The contractors' testimony did not show direct payoffs to Smith. However, we cannot agree, as he argues, that the testimony of the contractors was immaterial. It was material to show that Dale and Haywood had already received the payoffs in the amounts charged, part of which they said they paid Smith pursuant to the agreement between them. And the testimony of Dippold was needed to show Smith's knowledge of the "percentage deal" and his part in arranging the "mechanics." So long as it was material, Smith can hardly claim it was inadmissible because he was prejudiced. And there is no merit to Smith's claim that error has been confessed because the Government "concedes" that Smith was not "boss"[2] of Dale and Haywood. The Government says only that the question of "control" by Smith is "academic" because the evidence directly tied in Smith as a participant in the 1% scheme. Finally, the court's instruction was not on the "boss" theory. The result of the testimony was not to try Smith for conspiracy, and the rules of evidence peculiar to conspiracy have no relevance.

2. Defendant argues ineffectually that the Government's case rests on the assumption, instead of evidence, that simply because he was "boss" of Haywood and Dale, he received part of the payoffs from them. His theory is that, because as an International vice-president he had no power under the Union constitution to discipline elected business representatives of autonomous district councils, he was not "boss" of Dale and Haywood and there would be no reason for them to include him in any payoff scheme.

■ During trial, defense moved under the rule in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), for an order to produce Dale's penitentiary medical records for use in cross-examination to show his alleged dope addiction. The trial court refused to extend the Jencks "rule" as requested and denied the motion. Testimony elicited by Smith showed only that thirteen years prior to the trial Dale would get "shots" from a doctor, after which he would act "rejuvenated." Dale denied drug addiction on cross-examination. Even assuming the Jencks case is applicable to these medical records,[3] which we do not decide, this evidence is an insufficient basis upon which to order these medical records turned over to defendant under the rule in the Jencks case or under Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We see no error in the court's ruling.

■ The district court also denied Smith's motion for production of grand jury minutes of the testimony of Dippold and other contractors, and Smith claims error in the ruling. Haywood's grand jury testimony with respect to what contractors attended the initial meeting was voluntarily turned over to defendant. Then on the theory that by this voluntary action the Government had waived "any immunity" with respect to the balance, defendant moved for all of the grand jury minutes stating it had a "particularized need" because they were relevant to the defense. There was no showing or claim of any inconsistency or contrariety in the testimony of any witness which the minutes were needed to impeach, and thus the district court could infer there was no "particularized need". Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1960). See also United States v. Micele, 327 F.2d 222 (7th Cir. 1964), cert. denied, 84 S.Ct.

1628 (June 1, 1964, No. 883, Oct. 1963 Term), United States v. Keegan, 331 F. 2d 257 (7th Cir. 1964), pet. for cert. pending (U.S., No. 1228, Oct. 1963 Term). We see no error in the ruling.

■ Government rebuttal witness Freese testified to hearing Smith say on the telephone "about having Haywood killed"; and to hearing a similar statement by Smith in a later telephone conversation, "well, that's the end of Haywood." Smith contends, relying on United States v. Sweeney, 262 F.2d 272 (3d Cir. 1959), that the admission of this rebuttal testimony in his trial for tax evasion is obviously prejudicial. There was no objection to the original question in Smith's cross-examination in answer to which he denied that he had ever threatened to kill Haywood if the latter did not "go along." The testimony of Freese was admissible to meet the defense evidentiary theory, developed on direct examination, that the Union constitution gave no power to Smith to discipline Haywood or Dale, and to show that Smith had other persuasive means to force his will.

■ No objection at the time was made to a "dare" made by the prosecutor in argument to the jury, or to the prosecution's reference to investigator's "checking * * * stories" of Dale and Haywood to see "if it [sic] is believable" and saying "I think it is." These points are waived.

The verdict against Smith was returned February 1, 1963, and Dale's sentence was commuted by Presidential order February 25, 1963. Thereafter Smith moved in arrest of judgment on the ground that prosecutors had made misrepresentations to the jury that Dale had "nothing" to gain by "lying" and that the Government had not made a deal with him. Smith also moved for production of reports by Government agents who interviewed Dale in prison to show that deals had been offered Dale if he

---

3. In Rosenberg v. United States, 360 U.S. 367, 369, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959), the Court said that since its enactment the Jencks Act, 18 U.S.C. § 3500, and not the Jencks decision, governs what must be produced for defendant's inspection at trial.

would testify against Smith. Smith's motions were supported by affidavits. Opposing affidavits raised issues upon Smith's claim that the prosecution "deliberately concealed" from the jury the prospect of a commutation to Dale. After hearing argument the court denied the motions, seeing no prejudice to the defendant.

The question of a "deal" for his testimony was suggested in Dale's cross-examination, and denied on redirect by him. The jury had the "deal" issue, and the court presumably believed that the statements of the prosecutor were not misrepresentations and that there was no prejudice. We are not persuaded the ruling on the motion was error. The same is true of the motion to produce the "reports" to show offers of deals. If the court was satisfied there was no prejudice, there was no need of a showing at that time that agents may have made offers of deals with Dale. We cannot say there was, or could have been, prejudice in the circumstances.

Petit juror Malmberg sat on the grand jury which in 1954 and 1955, seven and one-half years before Smith's trial, indicted Dale and Haywood and heard contractors testify again upon some of the same transactions that were subject of their testimony before the grand jury. Neither the prosecution nor the defense was aware of this fact until after the verdict against Smith was returned. Then Smith filed a motion in arrest of judgment. In support of his motion Smith filed an attorney's affidavit which, as the Government notes, shows that juror Malmberg did not even recall that she had participated in the indictments of Dale and Haywood.[4] No affidavit of juror Malmberg was submitted. The court, after arguments, upon briefs, filed a written opinion overruling the motion. Smith contends that this was reversible error because he was denied, as a matter of law, his Sixth Amendment right to an "impartial" jury.

The court concluded that "grossest speculation and conjecture" would be needed for a conclusion of Malmberg's bias toward Smith because of her grand jury experience; and that an unwarranted assumption would be required that she was "less than candid" during the voir dire examination when she stated under oath that she could give Smith "a fair and impartial" trial. The court refused to indulge the "assumption" that the contractors' testimony before the grand jury gave an impression of Smith's guilt of tax evasion; and thought even if it did, the impression would not last seven and a half years; and decided that proof of prejudice was wanting. It distinguished two categories of cases cited: where a grand juror voted to return the indictment and sat on the trial of that indictment, as the "one-man judge-grand jury" in In re Murchison, 349 U.S. 133, 137, 75 S.Ct. 623, 99 L.Ed. 942 (1955); and where jurors, at the same term of court, sit in trial of one offense after having found a guilty verdict against another for a related offense, as in Casias v. United States, 315 F.2d 614, 616 (10th Cir. 1962), cert. denied, 374 U.S. 845, 10 L.Ed.2d 1065 (1963). We agree with the court's conclusion that in either category there is a strong presumption of prejudgment not present in the Malmberg incident. In the absence of a showing otherwise, we must presume juror Malmberg was true to her voir dire oath.

Leonard v. United States, 84 S.Ct. 1696 (June 22, 1964), decided after argument in the case at bar, in which the Solicitor General confessed error, is easily distinguishable. There, the panel from which the Leonard petit jury was to be selected, was present in court when another petit jury returned a guilty ver-

---

4. The attorney's affidavit indicated that Mrs. Malmberg told an interviewer that she had served on a grand jury "approximately in the year 1954" and that "the grand jury * * * did consider some matters involving road construction, contractors, and labor leaders."

# 904

dict against Leonard in another case. The prejudice to Leonard is obvious.

 For the reasons given, we see no reversible error in the Smith trial, and we think the record supports his conviction for wilful income tax evasion in 1952 and 1953.

We have considered all the other points raised by defendant but we find no reversible error in them.

Judgment affirmed.