**UNITED STATES of America**

v.

**Thomas L. ROOT, Appellant.**

No. 08–2888.

United States Court of Appeals, Third Circuit.

Argued June 2, 2009.

Filed: Oct. 29, 2009.

Michael J. Fischer [Argued], Robert A. Zauzmer, Office of United States Attorney, Philadelphia, PA, for Appellee.

Bradley D. Barbin [Argued], Columbus, OH, for Appellant.

Before McKEE, HARDIMAN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Thomas Root appeals his judgment of conviction for tax evasion and conspiracy to defraud the United States following a jury trial. Although Root challenges the venue of the District Court and the sufficiency of the evidence as to the conspiracy count, the principal question of precedential import on appeal is whether the Government may charge a defendant for evading the assessment of taxes for multiple years in a single count.

### I.

We review the facts in the light most favorable to the Government because the jury found Root guilty of both charges. *United States v. Mornan*, 413 F.3d 372, 382 (3d Cir.2005).

### A.

A former attorney, Root began working in the mid–1990s as special projects director at Reading Broadcasting, Inc. (RBI), an independent television station in Reading, Pennsylvania. Root worked closely with RBI's Presidents—Micheal Parker and Frank McCracken—reviewing contracts, preparing shareholder correspondence and annual reports, and ensuring the company's compliance with Federal Communications Commission and Equal Employment Opportunity Commission regulations.

Pleased with Root's work, McCracken rewarded Root with additional commissions from a new client, Master Media Enterprises. The commissions were initially paid through RBI's payroll and included in Root's regular salary payments. As a result, taxes on the commissions were withheld and reflected on Root's W–2 forms. Soon thereafter, however, Root wrote to McCracken requesting that his commissions be paid to KGR New Perspectives (New Perspectives), a limited liability company that Root established in Ohio. Around the same time, McCracken—who also was receiving commissions from Master Media sales—requested that his commissions be paid to his own limited liability company (Framco) which Root had formed at McCracken's request. Between 2001 and 2004, RBI paid New Perspectives $94,077.34 and Framco $509,210.43. Because Root and McCracken had requested that the commissions be paid to their respective limited liability companies, these payments were not reflected on their respective W–2 forms.

In January 2002, RBI's bookkeeper, Barbara Williamson, asked McCracken and Root whether she should issue Form 1099s to New Perspectives and Framco to account for the commissions paid to those entities. Both men responded that they did not know whether 1099s were necessary when payments were made to limited liability companies, but that they would look into the matter further. When Williamson inquired a second time some weeks later, McCracken told her that she did not need to issue 1099s to those entities. As a result, RBI never notified the IRS of these payments.

At the same time they failed to inform the IRS of the commissions being paid to New Perspectives, Root and his wife Kathy cited the New Perspectives income on a loan application they submitted when refinancing their home mortgage in 2001. The payments made by RBI to New Perspectives were deposited equally into Kathy's personal account and into a New Perspectives account on which Kathy was the lone signatory.[1] In applying for the loan, the Roots listed as income Thomas Root's RBI salary as well as $3,000 of monthly income from New Perspectives attributable to Kathy Root. Because the bank required the couple to produce verification of the listed income, Thomas Root asked McCracken to sign a "Commission Agreement" between RBI and New Perspectives under which RBI would pay New Perspectives a two percent commission on monthly revenues that RBI collected from Master Media in exchange for sales services. Though Kathy Root signed the agreement on behalf of New Perspectives, the services were performed solely by Thomas Root.

In addition to the payments from RBI, Root received income from two Ohio attorneys, George Ford and Victor Merullo. Root performed legal research and writing services for the attorneys and instructed that they pay him through his sole proprietorship, Legal Information Services Associates (LISA). Ford and Merullo paid Root as an independent contractor but did not withhold taxes or issue 1099s to Root. From 2001 to 2003, Root earned $58,041.91 from Ford and $19,573.85 from Merullo.

Finally, Root performed services for Micheal Parker unrelated to his work at RBI, including setting up companies in connection with Parker's many business ventures. Parker paid Root—either directly or through LISA—a "success fee" or "bonus" for his work and covered his related expenses. Root earned $56,000 from Parker in 2001 and 2002. Parker never issued Root any 1099s in connection with these payments.

### B.

In preparing joint tax returns for himself and his wife for the tax years 2001, 2002, and 2003, Root failed to disclose the commissions he received from RBI or the income received from Ford, Merullo, and Parker. Furthermore, New Perspectives did not file tax returns for those tax years. Consequently, Root owed taxes in the following amounts: $11,571 in 2001, $19,619 in 2002, and $6,473 in 2003. After New Perspectives was served with a grand jury subpoena in 2004, Root filed amended returns for 2001, 2002, and 2003, which disclosed the payments made to New Perspectives in those years. Root still failed to disclose the income from Ford, Merullo, or Parker, however.

A grand jury indicted Root on one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, one count of tax evasion for the years 2000 to 2003 in violation of 26 U.S.C. § 7201, and seven counts of filing a false return in violation of 26 U.S.C. § 7206(1). The conspiracy count alleged that Root and McCracken agreed to defraud the United States by hiding portions of Root's income from the IRS.

Root, who is a resident of Ohio, moved for dismissal of the tax evasion and false return counts, contending that the Eastern District of Pennsylvania was an improper venue to bring those charges. The Government agreed to dismiss the false return charges and to limit the tax evasion count to the years 2001 to 2003, acknowledging that the alleged evasive acts relating to

---

1. New Perspectives was owned 85% by Kathy Root and 15% by Thomas Root.

2000 occurred exclusively in Ohio. After the Government made those concessions, the District Court determined that venue was proper with regard to the remaining counts and the case proceeded to trial. The jury convicted Root of both tax evasion and conspiracy. Following the verdict, Root moved for judgment of acquittal or, alternatively, for a new trial. The District Court denied both motions.[2]

## II.

Root first argues that his conviction for tax evasion should be vacated and dismissed because it alleged multiple years of evasion in a single count and was therefore duplicitous. "Duplicity is the improper joining of distinct and separate offenses in a single count." *United States v. Haddy,* 134 F.3d 542, 548 (3d Cir.1998). Whether an indictment is duplicitous is a question of law subject to *de novo* review. *Id.* at 547.

## A.

To determine whether a count is duplicitous, we must ascertain the allowable unit of prosecution to decide whether the indictment properly charges a violation of the pertinent statute. *Id.* at 548. To do so, we inquire into Congressional intent by examining the language of the statute. *Id.*

The tax evasion statute provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ..., or imprisoned not more than 5 years, or both....

26 U.S.C. § 7201.

Section 7201 is silent regarding whether each tax year must be charged separately or whether multiple years can be combined in one count. That question was considered in *United States v. Shorter,* 809 F.2d 54 (D.C.Cir.1987), where the Government charged the defendant with one felony count of tax evasion that covered twelve tax years. During the relevant time period, the defendant had conducted all of his personal and professional business in cash, avoided the acquisition of attachable assets, and failed to record receipts and disbursements. *See id.* at 57. The defendant argued that trying him for all twelve years in one count was duplicitous. *Id.* at 56.

The Court of Appeals for the District of Columbia Circuit disagreed, holding that "tax evasion covering several years may be charged in a single count as a course of conduct ... where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes for [those] years." *Id.* The court held that the defendant's activities constituted a continuous course of conduct, and each affirmative act of evasion was intended to evade payment of all taxes owed or anticipated at the time. *Id.* The court also observed that section 7201 does not directly address whether it is possible to charge a continuing scheme to evade taxes for several years. Rather, the statute merely makes it a felony for any person to "willfully attempt[ ] in any manner to evade or defeat any tax imposed by this title or the payment thereof." *Id.* at 57 (quoting 26 U.S.C. § 7201). This broad language, the court concluded, supported a finding that a multi-year tax evasion count "may fairly be read to charge but a single scheme and is therefore not duplicitous." *Id.*

---

**2.** The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction pursuant to 28 U.S.C. § 1291.

This Court followed *Shorter* in *United States v. Pollen*, 978 F.2d 78 (3d Cir.1992), where we upheld the Government's charge of four counts of tax evasion, each of which covered the same seven-year period. In each count, the Government alleged a distinct affirmative act: the illegal transfer of hundreds of thousands of dollars in successive attempts to evade payment of taxes over seven years. *Id.* at 86. We stated that while "it is logical ... to charge attempts to evade the assessment of taxes for distinct years in separate counts," *id.* at 87, "it is also permissible under section 7201 to charge tax evasion covering several years in a single count as a 'course of conduct' in circumstances 'where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes for these years,'" *id.* at 84 (quoting *Shorter*, 809 F.2d at 58). We noted the breadth of the statutory language, finding that "[t]he plain language of this section ... evinces the congressional intent to allow distinct, significant, affirmative acts of tax evasion to constitute separate section 7201 offenses," regardless of whether the evasion was carried out over a single year or multiple years. *Id.* at 86. Additionally, we stated that "nothing in section 7201's legislative history requires us to conclude that Congress intended to limit this provision's unit of prosecution to an individual tax year" and "the scant legislative history of this provision simply does not address the question of its allowable unit of prosecution." *Id.* at 86 n. 14 (citing H.R. REP. Nos. 83–1337 and 83–2543 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4137, 4572; 5280, 5343).

Relying largely on *Shorter* and *Pollen*, the District Court upheld the Government's inclusion of multiple years of evasion in a single count, finding that Root's actions constituted a "continuous course of conduct." *Shorter*, 809 F.2d at 57. These actions included: diverting commission payments from RBI for the years 2001 to 2003 through New Perspectives without declaring them as income; funneling his legal research payments from Ford and Merullo for the years 2001 to 2003 through LISA without declaring them as income; avoiding the issuance of 1099s to New Perspectives or LISA; and failing to declare as income any payments from Parker for the years 2001 or 2002. The court determined that these actions—taken over the course of three years—represent the sort of "consistent, long-term pattern of conduct directed at the evasion of taxes" found in *Shorter* and *Pollen*.

### B.

Root does not dispute that *Shorter* and *Pollen* approve of multi-year tax evasion prosecutions. Instead, he attempts to distinguish those cases by drawing a line between prosecutions under 26 U.S.C. § 7201 for evasion of tax *assessment*, which involve efforts to shield taxable income to prevent the IRS from determining one's tax liability, and evasion of tax *payment*, which concern conduct designed to place assets out of reach to prevent the IRS from settling one's tax liability. *See Sansone v. United States*, 380 U.S. 343, 354, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *United States v. McGill*, 964 F.2d 222, 230 (3d Cir.1992). Here, the Government alleges evasion of assessment, arguing that Root failed to disclose certain income in an effort to decrease his tax liability.[3] By

---

**3.** The Government erroneously argues that Root was charged with evading both the assessment and payment of his taxes. Though the indictment charged that Root "evaded the payment of more than $40,000 in federal income taxes," the reason Root evaded that *payment* was that he shielded aspects of his income from being *assessed* in the first place. Under the Government's definition, *every* evasion of assessment would also be an evasion

contrast, *Shorter* and *Pollen* were evasion of payment cases because they involved efforts to shield assets from recovery by the IRS once the defendants' tax liabilities were calculated. Root argues that unlike evasion of payment cases, in evasion of assessment cases, the Government must treat each tax year as the basis for a separate count.[4]

In a dictum in *Pollen,* we acknowledged that evasion of assessment and evasion of payment cases may be treated differently under § 7201, noting that the practice of combining years "is particularly appropriate in a case charging tax evasion committed through the evasion of payment." 978 F.2d at 87. This is because "a defendant attempting to evade payment of taxes may . . . engage in transactions designed to conceal assets from the IRS in an attempt to evade the payment of taxes due for a number of years." *Id.* By contrast, we explained, "[i]n cases charging evasion of the assessment of tax, the alleged fraudulent action of a defendant often directly affects assessment for a particular tax year. Consequently, it is logical in that type of case to charge attempts to evade the assessment of taxes for distinct years in separate counts." *Id.* The Fifth Circuit has similarly remarked: "Because our income tax system is on an annual basis, failure to report income must be charged for a specific year." *United States v. Boulet,* 577 F.2d 1165, 1167 (5th Cir.1978).

Root's argument also is supported by the Department of Justice's Criminal Tax Manual for 2008, which cites "two distinct manners" by which one can violate § 7201:

> Because income taxes are an annual event, an alleged evasion of assessment must relate to a specific year and it must be shown that the income upon which the tax was evaded was received in that year. Consequently, in most evasion of assessment cases, each tax year charged stands alone as a separate offense. Thus, a charge that a taxpayer attempted to evade and defeat taxes for the years 1990, 1991, and 1992 would constitute three separate counts in an indictment.
>
> Evasion of payment, on the other hand, often involves single acts which are intended to evade the payment of several years of tax due the government. Thus, in evasion of payment cases, it is sometimes permissible to charge multiple years of tax due and owing in one count.

UNITED STATES DEPARTMENT OF JUSTICE TAX DIVISION CRIMINAL TAX MANUAL 2008, § 8.07[2] (internal citations omitted). The Manual cites both *Shorter* and *Pollen* as examples of cases where courts approved of multi-year evasion of payment prosecutions.

Notwithstanding the Manual's guidance—and the analogous nature of the hypothetical posed therein—we find it neither controlling nor persuasive. As a preliminary matter, the Manual lacks legal authority. The Manual, which was published by the Assistant Attorney General for the Department of Justice's Tax Divi-

---

of payment because the evasion of assessment would logically lead to a shortfall in tax payment. Therefore, we reject the Government's characterization of the evasion in this case.

**4.** Our concurring colleague asserts that this case is not of precedential import because the resolution of the issue we decide today was foretold by *Pollen.* But *Pollen* concerned an evasion of payment and this case concerns an evasion of assessment. Moreover, to the extent that *Pollen* addressed only the issue of "multiplicitous" and not "duplicitous" charges, our decision today makes clear that the reasoning of *Pollen* extends to both charging scenarios. *See* Concurrence at 159 n. 7 ("As the issue in *Pollen* was whether the indictment was 'multiplicitous,' we did not directly address duplicity as we do here.").

sion, contains a disclaimer which accurately notes: "This Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice."

Additionally, the distinctions drawn in the Manual do not follow from the statutory language, which penalizes "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof." 26 U.S.C. § 7201. Section 7201 neither distinguishes between evasion of assessment and evasion of payment, nor suggests that one type of evasion should be treated differently than the other for purposes of determining the unit of prosecution. Instead, the statute focuses on a defendant's acts—his willful attempts to evade or defeat any tax "in any manner"—rather than concentrating on the year or years when such conduct occurred. As we explained in *Pollen*: "The language of section 7201 is straightforward: it prohibits 'willful attempts in any manner to evade or defeat any tax.' It proscribes 'attempts' to evade or defeat any tax and thus speaks in terms of the act of evasion, as well as the taxes evaded." 978 F.2d at 86; *see also Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943) (analyzing predecessor tax evasion statute) ("Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation.").

As in *Pollen*, our inquiry here concerns Root's conduct, regardless of the length of time over which his acts took place. Federal Rule of Criminal Procedure 7(c)(1) allows a single count to allege "that the defendant committed [the offense] by one *or more* specified means." FED.R.CRIM.P. 7(c)(1) (emphasis added). It is true, of course, that taxes are assessed on an annual basis; in that sense, Root willfully evaded his 2001 federal tax assessment, his 2002 assessment, and his 2003 assessment. However, as the District Court found, each year's evasion resulted from the same conduct: a multi-year scheme in which he funneled money through a limited liability company and a sole proprietorship to hide money from the IRS. The Government alleged evasion of assessment of the same sources of income for all three tax years: the commission payments to New Perspectives and the legal work performed for Ford and Merullo, as well as payments received from Parker in 2001 and 2002. Furthermore, *Pollen's* dictum does not foreclose an evasion of assessment prosecution relating to multiple years; it merely observes that an evasion of assessment "often" affects the assessment of a single year's income. In this case, however, Root's evasive acts affected the assessment income for multiple years.

Accordingly, we decline Root's invitation to treat evasion of assessment cases differently than evasion of payment cases and we hold that the reasoning of *Pollen* extends to evasion of assessment prosecutions as well. Though the Government could have brought three separate counts for this single pattern of events spanning three years, section 7201 does not require that it do so.[5]

---

**5.** For the same reason, Root's reliance on *United States v. Smith*, 335 F.2d 898 (7th Cir.1964), asks too much. In that case, the government brought separate counts alleging that the defendant evaded his taxes in 1951, 1952, and 1953. The defendant claimed a due process violation with regard to the 1951 count and sought dismissal of his *entire case*

## C.

■ Our inquiry in the present case is not limited simply to consideration of whether the text of section 7201 permits the Government to charge Root's conduct in a single count. Rather, we next examine the concerns traditionally associated with charging "in one count what could be several independent charges" and conclude that they are not implicated in this case. *Shorter*, 809 F.2d at 58 n. 1. The purposes of the prohibition against duplicity include: (1) avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another; (2) avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and (5) protecting against double jeopardy in a subsequent prosecution. *Id.; United States v. Margiotta*, 646 F.2d 729, 732–33 (2d Cir.1981). An assessment of such policy considerations is critical to any duplicity analysis, for fundamental fairness and due process of law may prohibit combining what could be several independent charges into a single count, even if the text of a particular statute allows it. *See Shorter*, 809 F.2d at 58 n. 1 ("in determining whether fairness requires dismissal of an indictment which includes in one count what could be several independent charges, the Court must measure that indictment against the pur-poses of the prohibition against duplicity.").

These concerns are absent in this case because Root's evasive conduct was consistent during the three-year time period. Because Root was engaged in a "continuous course of conduct," the evidence relating to each year is identical and it would be logically inconsistent for the jury to find Root guilty in light of his 2001 conduct, but not guilty based upon the same conduct in 2002 and 2003. Root implies that the Government lumped the years together to meet section 7201's requirement of a "substantial tax deficiency." *See United States v. McKee*, 506 F.3d 225, 235–36 (3d Cir. 2007). The record demonstrates Root evaded the assessment of more than $50,000 of income in each of the years in question. While we have not yet spoken on what specific dollar amount constitutes a "substantial" deficiency, our sister circuits have established a fairly low threshold. *See United States v. Davenport*, 824 F.2d 1511, 1516–17 (7th Cir.1987) ($3,358.68 in taxes evaded sufficient to support taxpayer's conviction); *United States v. Gross*, 286 F.2d 59, 60–61 (2d Cir.1961) (unreported income in the amount of two $2,500 payments deemed "substantial"); *United States v. Nunan*, 236 F.2d 576, 585 (2d Cir.1956) ("[A] few thousand dollars of omissions of taxable income may in a given case warrant criminal prosecution."). Accordingly, Root's evasion—even when considered in single-year increments—was "substantial." [6]

---

as a result. The Seventh Circuit disagreed: "We agree that the three counts might be said to pertain to a 'continuing course of illegal conduct,' in the sense that the intention was to avoid taxes so long as payoffs continued, but in a criminal tax evasion case each year stands alone, and the failure to pay taxes in each of the years involved constitutes a separate offense." *Id.* at 900–01. Root argues that *Smith* requires that the appropriate unit of prosecution must be one year. But *Smith* indicates only that the 1952 and 1953 charges

can exist independent of the 1951 charge, even if those charges were part of a larger pattern of activity that also included the 1951 count which was under challenge. This supports the notion that charges for separate years *may* be brought separately, not that they *must* be brought separately.

6. The concurrence correctly notes that inflation diminishes the real value of money over time. *See* Concurrence at 168–69. Thus, the "$3,358.68 of taxes held to be substantial

Moreover, Root cannot point to any valid sentencing concern. Instead of being convicted for three single-year counts of tax evasion, Root was convicted on one three-year count. "In such circumstances, duplicity may actually inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme." *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir.2006) (internal quotations omitted) (assessing practice of charging two illegal ammunition possessions in a single count).

■ "If the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations" that underlie that doctrine. *United States v. Murray*, 618 F.2d 892, 897 (2d Cir.1980). The identification of these considerations suggests that a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses, but only when the failure to do so risks unfairness to the defendant. *See Cohen v. United States*, 378 F.2d 751, 754 (9th Cir.1967); *see also United States v. Sturdivant*, 244 F.3d 71, 75 n. 3 (2d Cir.2001) (noting that duplicitous charging is impermissible only if it prejudices defendant). That risk is slight in a case like this where the alleged wrong is a single scheme to defraud that can be proven by evidence relating to similar conduct over a period of years.

In sum, because the statutory language does not prohibit the Government's decision to charge Root for multiple years in one count and because analysis of the concerns traditionally associated with duplicitous charges demonstrates that Root was not prejudiced by that decision, we hold that the Government's charge was not impermissibly duplicitous. Accordingly, we will affirm the District Court's denial of Root's motion for judgment of acquittal.

### III.

■ Root next argues that the District Court lacked venue as to the tax evasion count and that his case should have been brought in Ohio, where he resides. We review a District Court's denial of a motion to change venue for abuse of discretion. *U.S. v. Inigo*, 925 F.2d 641, 654 (3d Cir.1991). The Government bears the burden of proving venue by a preponderance of the evidence and venue must be proper for each count of the indictment. *United States v. Perez*, 280 F.3d 318, 328–30 (3d Cir.2002).

■ Proper venue in criminal trials is more than just a procedural requirement; it is a constitutionally guaranteed safeguard. *United States v. Baxter*, 884 F.2d 734, 736 (3d Cir.1989). The Constitution states: "The Trial of all Crimes ... shall be held in the State where said Crimes

evasion for the tax year 1980 in *Davenport* ... is equivalent to $7,218.72 in 2001, the first year for which Root is charged." *Id.* at 168–69 (analyzing *Davenport,* 824 F.2d at 1516–17). This inflationary impact, the concurrence argues, undermines the significance of several of the older cases we cite to support our conclusion that section 7201's requirement of a "substantial" tax deficiency does not set a high bar for the Government. *Id.*

In the present case, however, Root's individual tax deficiency amounted to $11,571 in 2001, $19,619 in 2002, and $6,473 in 2003. Therefore, even after accounting for the effect of inflation, Root's tax deficiency for the years 2001 and 2002 would still far exceed the low level found to be "substantial" in *Davenport*. Further, Root's tax deficiency of $6,473 for 2003 would be just $745.72 less than the 2001 equivalent of the tax deficiency that the Seventh Circuit found to be substantial in *Davenport*.

shall have been committed...." U.S. Const. art. III, § 2, cl. 3. Furthermore, the Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury of the State and district wherein the crime shall have been committed* ...." U.S. Const. amend. VI (emphasis added).

In addition to the constitutional requirements, Rule 18 of the Federal Rules of Criminal Procedure provides: "Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed.R.Crim.P. 18. We have held that Congress has the power to lay out the elements of a crime to permit prosecution in one or any of the districts in which the crucial elements are performed. *Perez*, 280 F.3d at 329.

Root argues that his constitutional and statutory rights were violated because he was prosecuted in the Eastern District of Pennsylvania instead of the Northern District of Ohio, where most of the activity in this case took place. For instance, Root filed his tax returns, earned his LISA income, received his income from Parker, and performed much of his services for RBI in the state of Ohio. As Root acknowledges, however, some of his illegal activities occurred within the Eastern District of Pennsylvania. RBI is headquartered in Reading and the Commission Agreement between RBI and New Perspectives was found at RBI's offices there. Additionally, Root often traveled to Reading in connection with his job.

■ Given Root's contacts with the Eastern District of Pennsylvania, we find that venue was proper there. Tax evasion is a continuing offense under 18 U.S.C. § 3237(a), *United States v. Barker*, 556 F.3d 682, 689 (8th Cir.2009), and Congress has provided that an offense against the United States that spans multiple districts "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). The locality of a crime for the purpose of venue extends "over the whole area through which force propelled by an offender operates." *United States v. Johnson*, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944). As we have noted, Root was responsible for a "consistent, long-term pattern of conduct" which spanned numerous years and took place in multiple states and districts. Although Root's taxes were mailed from another jurisdiction, he does not dispute that "a few of [the acts leading to the evasion] occurred in the Eastern District of Pennsylvania." Consequently, venue was proper there under 18 U.S.C. § 3237(a).

Root argues that "[a]ll charges could have been brought by the Government in Ohio." This argument, while true, is of no moment. Even though a substantial portion of Root's acts were committed in the Northern District of Ohio and he may have preferred that he had been charged there, nothing required the Government to charge Root where a majority of the acts took place. While Root is correct in noting that the Supreme Court has not recognized pendent jurisdiction in criminal cases, *see United States v. Cabrales*, 524 U.S. 1, 6–7, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998), his appeal does not implicate pendent jurisdiction; the allegations of tax evasion were brought in a single count which, as determined in Part II *supra*, was not duplicitous. Furthermore, the jury was specifically instructed that, "[f]or you to return a guilty verdict, the government must convince you that some act in furtherance of the crime charged ... took place here in the Eastern District of Pennsylvania." The jury so found. Accordingly, Root was subject to trial in the Eastern

District of Pennsylvania and the District Court did not abuse its discretion when it denied his motion to dismiss for improper venue.

## IV.

Finally, Root argues that his conspiracy conviction—which alleged that Root and McCracken agreed to impede the lawful function of the IRS in the assessment and collection of Root's income taxes—should be vacated because the Government presented insufficient evidence to prove a conspiracy to defraud the government. Root must overcome a "very heavy burden" to overturn the jury's verdict for insufficiency of the evidence. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). We will sustain his conviction if, viewing the evidence in the light most favorable to the Government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir.1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

To establish a conspiracy to defraud the United States in violation of 18 U.S.C. § 371, the Government must prove beyond a reasonable doubt: (1) an agreement to defraud the United States; (2) an overt act by one of the conspirators in furtherance of the conspiracy; and (3) an intent on the part of the conspirators to agree as well as to defraud the United States. *McKee*, 506 F.3d at 238.

Root argues that the Government cannot meet its burden with regard to the first prong because it cannot prove an agreement between Root and McCracken to defraud the United States. Root argues that to prove that he and McCracken conspired to defraud the United States, the Government must prove not only that Root himself evaded taxes, but also that McCracken did so as well. This argument overstates the Government's burden.

Root relies heavily on *United States v. Adkinson*, 158 F.3d 1147 (11th Cir.1998), in which the Court of Appeals for the Eleventh Circuit reversed the convictions of four defendants in the absence of "evidence of an agreement by all for each to evade his income taxes." 158 F.3d at 1154. *Adkinson* is factually distinguishable, however. In that case, in addition to asserting a conspiracy, the Government alleged that each of the three defendants had failed to file tax returns or filed a false return. *Id.* at 1154 n. 15. Therefore, the court required "evidence of an agreement by all for *each* to evade his income taxes." This stray language should not be interpreted to require that all tax-related conspiracies require that each conspirator file a false return. In Root's case, the Government need only prove that he and McCracken agreed to impede the lawful functions of the IRS in some manner and that one of the two men took some overt act in furtherance of that goal.

In the present case, the Government asserts that Root and McCracken conspired to defraud the United States with respect to Root's taxes; there is no need for the Government to prove that the men also conspired with regard to McCracken's taxes as well. If they also conspired to defraud the IRS with respect to McCracken's taxes—which is not alleged in this case—that would be an entirely different conspiracy and could have been charged separately.

Root also argues that the Government did not prove that Root and McCracken had any agreement. Though there is no direct evidence of an agreement in this case, an agreement to defraud the United States "can be proven circumstantially based upon reasonable infer-

ences drawn from actions and statements of the conspirators or from the circumstances surrounding the scheme." *McKee*, 506 F.3d at 238; *see also United States v. Smith*, 294 F.3d 473, 478 (3d Cir.2002) (finding that a reasonable juror could certainly conclude that a tacit agreement exists amongst a group of people when they engage in "so many unusual acts"); *United States v. Barr*, 963 F.2d 641, 650 (3d Cir. 1992) ("It is well settled that a written or spoken agreement among alleged co-conspirators is unnecessary; rather, indirect evidence of [a] mere tacit understanding will suffice."). When the Government relies on circumstantial evidence to establish a tax conspiracy, "the circumstances must be such as to warrant a jury's finding that the alleged conspirators had some common design with unity of purpose to impede the IRS." *McKee*, 506 F.3d at 240. The evidence must be sufficient to show that impeding the IRS was one of the conspiracy's objects, and not merely a foreseeable consequence or collateral effect. *United States v. Gricco*, 277 F.3d 339, 348 (3d Cir.2002).

The Government presented ample circumstantial evidence to support the jury's finding that Root and McCracken had an agreement to defraud the IRS with regard to Root's taxes. Root was not an uneducated citizen caught up in the complexities of the tax code; he was an experienced businessman and former lawyer who had knowledge of tax issues and familiarity with creating limited liability companies and proprietorships. Viewing the evidence in the light most favorable to the verdict, a reasonable juror could conclude that Root's requests to have his commissions and other payments directed to New Perspectives and LISA were intended to avoid paying income taxes on that income. Indeed, shortly after Root requested in writing that McCracken assign his commission payments to New Perspectives, McCrack-

en directed RBI's bookkeeper, Barbara Williamson, to send Root's payments to New Perspectives and his own payments to a limited liability company that Root had created for him. A reasonable juror could infer that the men had discussed the benefits of diverting payments to a limited liability company and that McCracken decided to follow Root's example. Furthermore, Williamson testified that she had a discussion with both McCracken and Root regarding whether 1099s should be issued to their respective limited liability companies with regard to those payments. The men said they would look into the matter, but McCracken later told Williamson that she need not fill out such forms. Though Williamson could not recall whether Root participated in the second conversation, a reasonable juror could infer that Root and McCracken agreed to misinform Williamson in an attempt to conceal Root's income. Finally, at Root's request, McCracken signed a "Commission Agreement" diverting Root's commissions to New Perspectives. Root's wife Kathy signed that agreement on behalf of New Perspectives, even though Thomas Root performed all of the services meriting those payments. The Commission Agreement was later found at RBI in a folder marked "Framco," allowing a reasonable juror to connect McCracken's limited liability company with Root's limited liability company. Accordingly, we hold that the evidence was sufficient to support Root's conspiracy conviction.

### V.

For the foregoing reasons, we find no error by the District Court and will affirm Root's judgment of conviction.

McKEE, Circuit Judge, Concurring in the Judgment.

My colleagues believe "the principal question of precedential import on appeal

[in this case] is whether the Government may charge a defendant for evading the assessment of taxes for multiple years in a single count." Maj. Op. at 148. However, the answer to that question is foretold by our decision in *United States v. Pollen*, 978 F.2d 78 (3d Cir.1992). There, we adopted the analysis of the Court of Appeals for the District of Columbia in *United States v. Shorter*, 809 F.2d 54 (D.C.Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987). As I will discuss below, in *Pollen*, the Government combined different methods of violating 26 U.S.C. § 7201, into four counts of tax evasion, but each was for the same seven-year time frame. Pollen argued that charging him in this manner subjected him to multiple punishments for the same offense and was therefore "impermissibly multiplicitous." *Pollen*, 978 F.2d at 83.[7] In rejecting that argument, we relied on *Shorter* and held: "[i]t is . . . permissible under section 7201 to charge tax evasion covering several years in a single count as a 'course of conduct' in circumstances 'where the underlying basis of the indictment is an allegedly consistent, long-term pattern of con-

duct directed at the evasion of taxes for those years.'" *Id.* at 84 (quoting *Shorter*, 809 F.2d at 58).

Therefore, the question posed by my colleagues is not as novel as my colleagues suggest.[8] In *Pollen*, we relied on *Shorter* in determining whether a single charge for multiple years was permissible under the relevant statutory provision, 26 U.S.C. § 7201, based on the provision's legislative history and the nature of the conduct proscribed by the statute. The same statutory provision is at issue here. Accordingly, we need not focus on whether the Government *can* combine several violations of 26 U.S.C. § 7201 into a single count as a matter of law. We have already determined that it can. We should instead be focusing on whether the Government *may* do so here without transgressing the defendant's right to due process of law. More precisely, we should question whether the Government denied Root due process of law by joining 3 tax years into a single count of tax evasion under these circumstances. For reasons I shall ex-

---

7. As the issue in *Pollen* was whether the indictment was "multiplicitous," we did not directly address duplicity as we do here. *See* 1A Charles Alan Wright *et al.*, Federal Practice and Procedure § 142 (3d ed. 1999) ("[M]ultiplicity" refers to the Government improperly charging the same offense in multiple counts; "duplicity" refers to an indictment where the Government charges two or more distinct offenses in one count. In the latter situation, it cannot be determined if the jury's verdict was unanimous as to each distinct offense.) *See also United States v. Nolan*, 718 F.2d 589, 594 n. 4 (3d Cir.1983) ("Appellant . . . argues that the charge in Count V . . . is 'duplicitous' of the Count I conspiracy charge encompassing the same events. 'Duplicity is the joining in a single count of two or more distinct and separate offenses.' . . . But duplicity, so defined, is not what appellant is complaining about. We assume that appellant means that Counts I and V are multiplicitous, *i.e.*, they charge the same of-

fense, . . . and that he was thus placed in double jeopardy because the overt acts alleged in the two counts were identical.").

As will be seen from the discussion that follows, although *Pollen* involved multiplicity and not duplicity, the doctrines are quite similar and they both limit the manner in which multiple crimes (or a course of conduct constituting a single crime) can be charged. I therefore agree that *Pollen* is relevant to Root's claim of duplicity.

8. *Pollen* is somewhat distinguishable because the indictment there charged evasion of taxes rather than the evasion of assessment that the Government charged here. Nevertheless, the reasoning of *Pollen* should apply with full force here. My colleagues dismiss the significance of that distinction in making their determination that this indictment does not violate due process while disregarding the extent to which the analysis in *Pollen* applies here.

plain, I believe the indictment is improperly duplicitous and created the potential for the jury to convict on Count Two even though not all jurors agreed that he was guilty for evading taxes in each of the years charged in that count. However, as my colleagues explain, "the record demonstrates Root evaded the assessment of more than $50,000 of income in each of the years in question." Maj. Op. at 154. Accordingly, this clearly duplicitous indictment "did not impair the integrity of the trial as a whole or put the case in such a different light so as to undermine confidence in the verdict." *United States v. Milan*, 304 F.3d 273, 287 (3d Cir.2002). I therefore concur in the judgment. Nevertheless, I believe that this indictment was duplicitous, and I am *in dubitante* about the propriety of finding venue for Count Two in the Eastern District of Pennsylvania under the circumstances here.[9]

## I. Background.

The indictment originally charged Root with a single count of income tax evasion in violation of 26 U.S.C. § 7201 as to his 2000, 2001, 2002, and 2003 tax returns. 26 U.S.C. § 7201 provides:

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony and, upon conviction thereof, shall be

fined not more than $100,000 ..., or imprisoned not more than 5 years, or both....

After he was indicted, Root filed an omnibus pretrial motion in which he argued (in part) that venue in the Eastern District of Pennsylvania was improper because all of the actions underlying the alleged tax evasion in 2000 occurred in Ohio. In response, during a subsequent telephone conference with the court, the Government agreed to drop the charges related to offense conduct that occurred in 2000.[10] Root also argued that Count II was duplicitous.

"Duplicity is the improper joining of distinct and separate offenses in a single count [of an indictment]." *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir.1998). As we explained in *Haddy*, "[d]uplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, ... or endanger fair sentencing." *Id.* (citing *Shorter*, 809 F.2d at 58 n. 1). "An indictment should be dismissed as impermissibly duplicitous ... if trial on a single count would be unfair to the defendant." *United States v. Shorter*, 608 F.Supp. 871, 879 (D.D.C.1985) (collecting cases), *aff'd*, 809 F.2d 54 (D.C.Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98

---

**9.** "The term 'dubitante' 'is [used] ... to signify that [a judge] doubted the decision rendered.' " Black's Law Dictionary 448 (5th ed.1979); *see Salvation Army v. Dep't of Cmty Affairs of State of N.J.*, 919 F.2d 183, 202 (3d Cir.1990).

**10.** The district court explains the proceedings leading to the Government's agreeing to forego any violation for 2000 as follows:

> Defendant argued that ... all of the allegations of evasive acts and tax deficiency for the year covered by the 2000 tax return occurred exclusively in Ohio.... Ultimately, following a hearing, this Court denied

Defendant's motion without prejudice, noting that the Defendant would have the opportunity to reassert any objection to venue at trial.

In the weeks leading up to trial, Defendant again attacked Count Two, asking the Court to dismiss Count Two as duplicitous, and reasserting his venue objection. Following a telephone conference, the Government agreed to drop the allegations pertaining to the year 2000 from Count Two of the Indictment.

*United States v. Root*, 560 F.Supp.2d 402, 411 (E.D.Pa.2008) (internal quotation marks and citations omitted).

L.Ed.2d 35 (1987). Improperly aggregating multiple violations of law into a single count (absent precautions that were not taken here) is improper because "there [may be] no way of knowing with a general verdict on ... separate offenses joined in a single count whether the jury was unanimous with respect to [any of the offenses]." *United States v. Starks*, 515 F.2d 112, 117 (3d Cir.1975).

As the majority explains, to establish Root's criminal liability under § 7201 for conduct that occurred during the 3 remaining years on which the parties went to trial, the Government was required to present evidence showing a "substantial tax deficiency." Maj. Op. at 154 (citing *United States v. McKee*, 506 F.3d 225, 235–36 (3d Cir.2007)). It is axiomatic that the right to trial by jury "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). Accordingly, the jury had to decide whether the amount of the deficiency that the Government charged was actually "substantial" *in each year* in which he was charged with violating § 7201.

My colleagues rely heavily on *Pollen* and *Shorter* to support their conclusion that Count Two—which grouped tax evasion charges for 2001, 2002 and 2003—is not duplicitous; the Government's brief also makes frequent reference to those cases. However, a closer examination of both of those cases reveals that neither supports the Government's decision to indict Root for evasion of taxes over 3 years in 1 count, as the Government did here. In fact, both support Root's claim that Count Two was impermissibly duplicitous.

## II. *Shorter* and *Pollen* Do Not Support Combining Tax Years in One Count Without Appropriate Precautions.

The defendant in *Shorter* was charged with twelve separate offenses of tax evasion, in violation of 26 U.S.C. § 7201, by failing to pay income taxes for the years 1972 through 1983, as well as several misdemeanor counts not relevant to our discussion. *See Shorter*, 809 F.2d at 56. He challenged the indictment arguing that it improperly included offenses that were beyond the statute of limitations and that combining several tax years was "impermissibly duplicitous." *Id.* In rejecting the argument, the Court of Appeals for the District of Columbia agreed with other courts of appeals and held that it is permissible to charge conspiracy to evade several years' taxes as one count "where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes for these years." *Id.* (citations omitted). The court of appeals also noted that any analysis of a claim of duplicity must look to, "(1) the language and legislative history of the statute and (2) the nature of the proscribed conduct." *Id.* (citing *Shorter*, 608 F.Supp. at 877). That is what the majority does here, and I do not disagree with that part of my colleagues' analysis.

However, another factor was crucial to the district court's rejection of Shorter's duplicity claim and the appellate court's affirmation of that ruling. As the district court explained: "[Shorter's] duplicity argument stands or falls not on the narrow basis of tax evasion law but on how it measures up against more general principles." *Shorter*, 608 F.Supp. at 876–77. Thus, the district court made clear that "if trial on a single count would be unfair to the defendant," a duplicitous indictment should be dismissed even though the

charging statute may otherwise permit it. *Id.* at 879.

To determine whether the indictment required dismissal to remedy unfair prejudice to the defendant, the district court realized that it "must measure [the] indictment against the purposes of the prohibition against duplicity." *Id.* As my colleagues have outlined, these purposes include generally: 1) the prevention of double jeopardy, 2) the assurance of adequate notice to the defendant, 3) the provision of a basis for appropriate sentencing, 4) the danger that a conviction was produced by a verdict that may not have been unanimous as to any one of the crimes charged, and 5) avoiding the uncertainty of whether a general verdict of guilty as to one crime conceals a verdict of not guilty as to another crime. Maj. Op. at 153. Here, that means that we must assess "the danger that a conviction was produced by a verdict that may not have been unanimous as to any one of the crimes charged." *Shorter,* 608 F.Supp. at 876–77. As I explain below, I believe the majority's analysis incorrectly dismisses the danger of a verdict lacking unanimity that could arise from the inclusion of multiple years of evasion of assessment in one count.

In its analysis of whether the indictment was fair, the district court in *Shorter* realized the risk that some jurors may vote for conviction based on actions that took place in one year, while other jurors might return a guilty verdict based on conduct in an entirely different year.[11] *See Shorter,* 608 F.Supp. at 881. The district court

offered the following explanation of how it would address that danger:

> The Court has concluded that, while ... the prosecution may go forward on the basis of the present indictment, the defendant is entitled to be protected against the danger that, on such an indictment, he will be convicted not on the basis of one unanimous verdict on a single set of facts but under juror votes for conviction which, depending on the particular member of the jury, relate to entirely different years.
>
> Both interests may be accommodated by appropriate jury instructions and special interrogatories to the jury. To this end, *the Court intends to instruct the jury in some detail on these issues and to request it to answer special interrogatories.*

*Id.* (footnote omitted) (emphasis added).

The district court's concern was not overlooked by the court of appeals. The court of appeals upheld the district court's conclusion that the evasion of payment of taxes could be charged in one count as a "continuous course of conduct," but made clear that the inquiry did not end there. In affirming the district court's rejection of Shorter's duplicity claim, the court of appeals explained: "The District Court correctly noted also that in determining whether fairness requires dismissal of an indictment which includes in one count what could be several independent charges, the Court *must* measure that indictment against the purposes of the prohibition against duplicity.... The District Court held that all four purposes were met

---

**11.** I acknowledge that the statute of limitations issue exacerbated the potential prejudice in *Shorter* with respect to the duplicity claim. The statute of limitations for tax evasion is six years. 26 U.S.C. § 6531. Shorter was charged with a single felony count of willful attempt to evade payment of income taxes due from 1972 through 1983, and arguably risked conviction for years beyond the reach of the statute of limitations. The verdict was returned in 1984, thus creating the potential of a conviction based on Shorter's failure to pay taxes only in a year that fell beyond the statute of limitations. *See Shorter,* 608 F.Supp. at 881.

here. We agree." 809 F.2d at 58 n. 4 (citing *Shorter*, 608 F.Supp. at 879) (italics added).

In *Pollen*, the defendant pled guilty to four counts of attempting to evade and defeat payment of his personal income taxes. Each of those counts charged a different method of evasion for the same group of seven years: 1967, 1970, 1972 through 1975, and 1982. Pollen had "made several international transfers of hundreds of thousands of dollars and secreted equally valuable assets in the United States, in attempts to evade payment of his taxes . . . for a total of seven tax years." *Id.* at 86. The acts of evasion of payment charged in the different counts included: 1) "placing part of his assets out of reach of the Government by causing approximately $690,000 in gold to be brought to the Swiss Bank Corporation, Toronto, Canada, with instructions to further transfer the gold to a nominee account" in Switzerland, 2) "transporting an additional $285,000" to the same bank with similar instructions, 3) using "currency, money orders, and cashiers checks to buy assets and pay expenditures" and 4) "maintaining more than $350,000 in gold bars and coins, jewelry, and gems in safety deposit boxes at the First Union National Bank of North Carolina" under a false name. *Pollen*, 978 F.2d at 82 (internal citation omitted).

In fact, for years, Pollen had conducted his affairs in such a manner as to avoid payment of all taxes, regardless of year, and to both hide and disguise assets that could be seized to satisfy his tax obligations. "He did not know for which years he owed which portion of the taxes he was attempting to evade." *Id. The uncontested evidence established that Pollen's actions did not correspond to any time frame, i.e., no act of evasion was directed toward any tax year nor any particular tax obligation.* During his

guilty plea colloquy, Pollen repeatedly stated that he knew he owed substantial taxes at the time of his conduct, but was unaware of the specific tax years he was attempting to evade. *See id.* at 86. Against that backdrop, we concluded:

> [O]n the facts of this case it is clear that Pollen attempted to evade all of the taxes he owed for the group of years in question through the several significant affirmative acts of evasion charged in the counts to which he pleaded guilty. *Under these circumstances*, where the acts of evasion charged in each count involve funds far greater than the taxes owed for any particular year, and, as Pollen himself indicated, each act was intended to evade payment of all taxes owed, not merely those owed for a particular year, we conclude that section 7201 permits a unit of prosecution based on separate significant acts of evasion. *Each willful attempt to evade taxes that involves funds of an amount that cannot logically be broken down and classified as relating to a particular tax year is an allowable unit of prosecution under the plain language of this section and so can be separately charged as evasion of the taxes owed for a group of tax years.*

*Id.* (emphasis added).

"Under [those] circumstances," we had no trouble finding that it was appropriate to charge multiple years in a single count as authorized by Congress. The facts that 1) the acts of evasion involved funds that were greater than the taxes Pollen owed for a particular year, and 2) that there was evidence that each act was intended to evade payment of all taxes owed and not directed to a specific year, were dispositive to our conclusion. We therefore explained:

> the unit of prosecution we recognize in this opinion is particularly appropriate

in a case charging tax evasion committed through the evasion of payment. In cases charging evasion of the assessment of tax, the alleged fraudulent action of a defendant often directly affects assessment for a particular tax year. Consequently, it is logical in that type of case to charge attempts to evade the assessment of taxes for distinct years in separate counts. Evasion of payment cases, however, stand in sharp contrast to evasion of assessment cases. A defendant attempting to evade payment of taxes may, as in this case, engage in transactions designed to conceal assets from the IRS in an attempt to evade the payment of taxes due for a number of years. As a result in evasion of payment cases it is logical to charge distinct, significant attempts to evade the payment of tax for the same group of tax years in separate counts.

*Id.* at 87.

It is important to note that both *Pollen* and *Shorter* involved evasion of payment rather than the evasion of assessment that is charged here. This distinction does not change the applicable legal analysis that was set forth in *Shorter*, and adopted in *Pollen*. However, where an indictment charges evasion of assessment, the risk of a denial of due process is greatly increased for reasons that were apparent to the dis-

trict court in *Shorter* and should be apparent here.

The majority too readily dismisses our discussion of this distinction in *Pollen* as *"dictum,"* despite its importance to our analysis there. *See* Maj. Op. at 152 ("In a dictum in *Pollen,* we acknowledged that evasion of assessment and evasion of payment cases may be treated differently under § 7201, noting that the practice of combining years 'is particularly appropriate in a case charging tax evasion committed through the evasion of payment.'") (citing *Pollen,* 978 F.2d at 87).

Although the crimes of evasion of assessment and evasion of taxes "frequently overlap," *see United States v. Mal,* 942 F.2d 682, 688 (9th Cir.1991), § 7201 nevertheless defines them as separate and distinct offenses.[12] *See Sansone v. United States,* 380 U.S. 343, 354, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *compare United States v. McGill,* 964 F.2d 222, 229 (3d Cir.1992) (listing elements of "evasion of payment") *with Cohen v. United States,* 297 F.2d 760, 770 (9th Cir.1962) (listing various means of evading assessment).[13] As *Pollen* illustrates, evasion of taxes frequently results in difficulty aligning offense conduct with a particular tax year or tax deficiency because the defendant intends to evade payment of actual *taxes,* not just assessments that would define tax obligations accruing in a particular tax pe-

---

**12.** My colleagues correctly note that it is easy to conflate evasion of assessment and evasion of taxes because the only reason to evade tax assessments is the concomitant evasion of the applicable taxes. *See* Maj. Op. at 151–52 n. 3. There is no reason to evade an assessment if the corresponding taxes are not also evaded. The majority recognizes the distinction and correctly rejects the Government's attempt to recast this case as an evasion of payment. *See id.* ("Under the Government's definition, *every* evasion of assessment would also be an evasion of payment because the evasion of assessment would logically lead to a shortfall

in tax payment. Therefore, we reject the Government's characterization of the evasion in this case.") (italics in original).

**13.** Although, the Court made clear in *Sansone* that § 7201 includes two different crimes, some courts take the position that it charges only one crime and simply specifies two methods of violating the statute. *See United States v. Waldeck,* 909 F.2d 555, 557 (1st Cir.1990) ("Sometimes it is convenient to say that different methods are different 'crimes,'" but noting "[w]e are not so bold as to either ignore or shunt *Sansone* aside....").

riod. Conduct intended to evade a tax assessment corresponds to the tax year of the affected assessment and can therefore readily be charged according to the applicable tax year. Moreover, it should be charged according to the applicable tax year.

Thus, our *holding* in *Pollen* expressly approved charging multiple years of evasive conduct in violation of § 7201 in a single count "under … circumstances" where the evasive conduct could not be connected to "a particular year." *Pollen,* 978 F.2d at 86; *see, e.g., McGill,* 964 F.2d at 233 (holding that a shift of bank account use after an IRS levy on other accounts over two and a half years constituted evasion of payment); *United States v. Conley,* 826 F.2d 551, 554–56 (7th Cir. 1987) (involving aggregation of numerous acts of concealment that took place over four years, including repeatedly placing assets in the names of family members and dealing in currency only); *United States v. Mollet,* 290 F.2d 273, 274–75 (2d Cir.1961) (concluding that refusal over a four-year period to inform IRS officers about the existence of brokerage accounts that could assist in paying taxes due constituted evasion of payment). That is not the situation here, and I am troubled that my colleagues seem so willing to overlook language in *Pollen* that was so important to the analysis there merely because it can arguably be labeled "dictum."[14]

Absent appropriate jury instructions and/or special interrogatories that address the risk of conviction on less than a unanimous verdict as to each year assessed, we should not tolerate indictments (such as the one offered here), which lump violations of multiple assessments into a single count. Moreover, when "measur[ing] that indictment against the purposes of prohibi-tion against duplicity[,]" we must carefully consider the risk of an unfair and unjust outcome. *Shorter,* 608 F.Supp. at 879.

## III. The Law of Other Jurisdictions and DOJ Policy are Consistent with *Pollen.*

The "logical" method of charging that we explained in *Pollen, i.e.,* charging distinct years in separate charges, has been followed by our sister courts of appeals. *See, e.g., United States v. Anthony,* 545 F.3d 60, 62 n. 1 (1st Cir.2008) (noting that the four-count indictment charging defendant of "willfully attempt[ing] to evade and defeat the assessment of the income tax due and owing" corresponded with the years 1999, 2000, 2001, and 2002); *United States v. Thompson,* 518 F.3d 832, 838 (10th Cir.2008) ("[Defendants] were indicted on … six counts of tax evasion, in violation of 26 U.S.C. § 7201, for the tax years 1992 through 1997."); *United States v. Nolen,* 472 F.3d 362, 369 (5th Cir.2006) (involving a three-count indictment for evasion of income taxes that corresponds with the years 1997, 1998, and 1999 where case involved both evasion of payment and assessment); *United States v. Carlson,* 235 F.3d 466, 468 (9th Cir.2000) (charging defendant with three counts of evasion of assessment for the years 1991, 1992, and 1993); *Mal,* 942 F.2d at 684 (indicting defendant for five counts of tax evasion under 26 U.S.C. § 7201, "one for each calendar year"); *United States v. Davenport,* 824 F.2d 1511, 1515 (7th Cir.1987) ("[T]he district court denied the defendant's motion [for judgment of acquittal] as to Count One, which was the tax evasion charge for the year 1980."); *United States v. Gross,* 286 F.2d 59, 60 (2d Cir. 1961) ("Gross was convicted only on Counts II and III, relating to understate-

---

**14.** *See Gov't of Virgin Islands v. Fonseca,* 274 F.3d 760, 764 (3d Cir.2001) (noting that dis-cussion that is not part of the holding is dicta).

ment of net income and of tax in the returns for 1954 and 1955"). The Court of Appeals for the Fifth Circuit has explicitly stated that evasion of assessment *"must"* be charged for each year in that manner. *See United States v. Boulet,* 577 F.2d 1165, 1167 (5th Cir.1978) (emphasis added).

The Government's proof of the defendant's guilt in *Boulet* was similar to a "net worth" prosecution. The Government had to present proof of income at the start of the charged period and then establish that any subsequent income was from a taxable source, and also earned, during the charged period. The Government therefore had to examine all of Boulet's bank deposits, establish the amount of taxable income, show proof of cash expenditures from taxable income, if any, and then reduce that amount by applicable deductions. The evidence in such a case is far more circumstantial and evasion far more difficult for the Government to prove than in a case like this one. *See id.* at 1168. Nevertheless, even though the method of proof there was more analogous to the prosecutions in *Pollen* and *Shorter* than to the prosecution here, the Court of Appeals for the Fifth Circuit made clear that "[i]t is part of the government's burden of proof to establish beyond a reasonable doubt that the expenditures and deposits come from taxable income for the very year in question. *Because our income tax system is on an annual basis, failure to report income must be charged for a specific year."* *Boulet,* 577 F.2d at 1167 (italics added). My colleagues mention this "remark[ ]" in *Boulet* in passing, and then dismiss the decision without analysis or discussion. *See* Maj. Op. at 152. I do not think that proclamation can be so easily brushed aside given our discussion in *Pollen.*

Similarly, although I agree with my colleagues' statement that the Department of

Justice's internal manuals are not binding on this (or any other) court, I do not think that we should so readily ignore the clear logic of their guidance that alleged evasion of assessment cases "must relate to a specific year." *Id.* (quoting Tax Div., U.S. Dep't of Justice, Criminal Tax Manual § 8.07[2] (2008)) Evasion of assessment cases often allow the Government to identify the tax deficiency for a given year *down to the penny.* Indeed, that is the case here. Unlike *Pollen,* this case does not involve indiscriminate evasion of payment of any and all taxes. There was simply no legitimate reason to conflate the 3 years of evasion of assessment into the same count here.

There is, however, substantial danger of prejudice in joining these 3 years in the same count without any safeguards such as jury interrogatories and specific instructions that were stressed in *Shorter.* Thus, despite our holding here, I hope that the Government will exercise its prosecutorial discretion more prudently when deciding how to structure future indictments for evasion of assessment under 26 U.S.C. § 7201. Indeed, I have no doubt that failure to do so may well warrant postverdict relief absent appropriate jury instructions and/or jury interrogatories as explained in *Shorter.* Although the potential of a verdict that is not unanimous is not realized in this case because the evidence against Root as to evasion in each year crammed into Count Two is overwhelming, as discussed below, the facts of this case reveal the danger inherent in duplicitous indictments.

## IV. This Case is Instructive in Showing the Dangers of Duplicitous Charges

Paragraph 3 (g) of Count Two of Root's indictment alleges:

On or about April 15, 2002, defendant ROOT filed a false federal income tax return for the year 2001 by failing to report substantial income from RBI, LISA, various lawyers and law firms, and [Mike Parker].

Government Exhibit JS–13 lists the "Schedule of Total Income For New Perspectives and LISA"[15] and specifies Root's sources of income during the years charged in Count Two as follows:

|  | SOURCE | 2001 | 2002 | 2003 | TOTAL |
|---|---|---|---|---|---|
| 1 | Reading Broadcasting | $ 5,394.22 | $34,794.72 | $37,088.74 | $ 77,277.68 |
| 2 | Mike Parker | 20,000.00 | 36,000.00 | | 56,000.00 |
| 3 | Merullo, Reister & Swinford Co. LPA | 11,539.60 | 4,044.00 | 3,990.25 | 19,573.85 |
| 4 | George Ford | 15,200.00 | 21,410.00 | 21,431.91 | 58,041.91 |
| | 2001 TOTAL | $52,133.82 | | | |
| | 2002 TOTAL | | $96,248.72 | | |
| | 2003 TOTAL | | | $62,510.90 | |
| | TOTAL ALL YEARS | | | | $210,893.44 |

Root was a resident of Ohio during the relevant time period and filed his tax returns from Ohio. All of the entities he was involved with, except Reading Broadcasting Inc ("RBI"), are situated in Ohio. RBI is the only entity named in the indictment that is located in the Eastern District of Pennsylvania. The other income as listed in the indictment and in the Government's Exhibit pertains to evasion of assessment on income earned in Ohio. As my colleagues note, Root also argued that venue in the Eastern District of Pennsylvania was not proper. The district court, at the Government's request, instructed the jury that it must find that "some act in furtherance of the crime charged, took place here in the Eastern District of Pennsylvania." Supp.App. at 69–70.

It is apparent from the above Exhibit, that the income from RBI varies considerably from 2001 to 2002 or 2003. While

Root was charged with receiving over $30,000 from RBI in each of 2002 and 2003, the Government only charged Root with receiving $5,394.22 from RBI in 2001.

As the Government notes, juries are presumed to follow the instructions they are given. Appellee Br. at 37 (citing *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954)). Here, the jury was instructed that in order to convict, it must find that some act in furtherance of the crime took place in the Eastern District of Pennsylvania. Accordingly, we must presume, at a minimum, that the jury found that Root evaded assessment of taxes on some of the income from RBI. Thus, if the Government had failed to proffer evidence sufficient to prove beyond a reasonable doubt that Root evaded assessment of taxes on income from the other sources—all of which were in Ohio—the verdict could have been based

---

**15.** LISA (Legal Information Services Associates) is a sole proprietorship created by Root to which he had Merullo and Ford, two Ohio-based attorneys, direct their regular payments to him. Supp.App. at 57–59.

solely on the income from RBI.[16] This very plausible scenario would have raised precisely the dangers endemic in duplicitous indictments that were discussed in *Shorter.* Root could stand convicted of evasion of assessment on his 2001 return for evading assessment of taxes on roughly $5,400 of income. Although it is certainly possible that a jury may conclude that the tax deficiency on that amount of income is "substantial," it is also possible that at least one juror would have a reasonable doubt about the question. This is especially true when one considers that corresponding income for 2002 and 2003 is approximately six times greater than the income from RBI charged for 2001. The doctrine of duplicity is intended to "avoid[ ] the ... risk that jurors may not have been unanimous as to any one of the crimes charged...." *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981); *see also* Maj. Op. at 154 (citing *Margiotta,* and listing other dangers underlying the doctrine of duplicity).

The Government mentions this very point in arguing that Root was not prejudiced here even if the indictment was duplicitous. The Government states:

> [T]here can be no dispute that the tax deficiencies caused by Root's failure to report the income he received from the commission payments were 'substantial' with respect to each of the years at issue. *See* Supp.App. 90 (noting that Root received $5,394.22 in unreported income from RBI in 2001, $34,794.72 in 2002, and $37,088.74 in 2003).

Appellee's Br. at 30 n. 15. The Government's argument is problematic. The conclusion that, as a matter of law, the tax owed on $5,394.22 is "substantial" for the purposes of § 7201, is untenable. Since it

is an element of the crime, determining whether a particular deficiency is "substantial" is a jury question that cannot be assumed as a matter of law without transgressing the limitations of the due process clause. *See Gaudin,* 515 U.S. at 510, 115 S.Ct. 2310.

My colleagues attempt to support the Government's speculative assertion by suggesting that there is a low threshold of proof for establishing that the amount of a tax deficiency is substantial. They refer to amounts that juries have found and our sister courts of appeals have affirmed as sufficiently "substantial" to sustain a conviction under § 7201. *See* Maj. Op. at 153–54. The argument is unavailing. In 2 of the 3 cases, the defendant was convicted for certain years and acquitted for other years of evasion with which he was charged—an option that Root would have been denied because of the duplicity in Count Two. *See Davenport,* 824 F.2d at 1515 (granting the defendant's motion for judgment of acquittal for Counts II and III, "which were tax evasion charges for the years 1981 and 1982" and being convicted on all other counts); *see also Gross,* 286 F.2d at 59 (noting that the defendant "was acquitted on Counts I, IV, V and VI," representing 4 of the 6 years for which defendant was charged).

Moreover, comparing the inflation-adjusted amounts found to be substantial in those cases reinforces that a jury may well have found the amount attributed to RBI in 2001 insufficient had the deficiency on income from RBI been charged separately. For example, the $3,358.68 of taxes held to be substantial evasion for the tax year 1980 in *Davenport,* is equivalent to $7,218.72 in 2001, the first year for which

---

**16.** As the majority explains, here, the evidence in support of the total amount of income on which Root evaded assessment in 2001 was such that there was no reasonable likelihood that a juror would have acquitted in 2001.

Root was charged.[17] *See* Maj. Op. at 154 (citing *Davenport*, 824 F.2d at 1516–17). Similarly, the unreported income of $2,500 in *Gross*, cited as "substantial" by the majority, was for tax years 1954 and 1955. *Id.* (citing *Gross*, 286 F.2d at 60–61). Income of $2,500 in 1955 is the equivalent of $16,520.52 in 2001.[18]

These concerns are both confirmed and exacerbated by statements the Assistant United States Attorney made before the district court. During the hearing on Root's Omnibus Pretrial Motion, the district court expressed understandable concerns about the propriety of charging multiple offenses in a single count. The court inquired into why various acts of evasion pertaining to Root's interest in LISA over multiple years were combined into a single count. The following exchange ensued:

**Court:** I'm wondering what it is with LISA that occurred in the Eastern District of Pennsylvania.

**AUSA:** Your Honor, it didn't have anything to do with the Eastern District of Pennsylvania

**The Court:** Well, I know that but yet you're charging that as part of Count II.

**AUSA:** We're required to under the venue statute and under the tax evasion statute.

**Court:** Why are you required to ... couldn't you just as well indict him in Ohio for failure to pay income tax on money he earned under this Legal Information Services Associates?

**AUSA:** No, Your Honor, because here's why. We have—as I said, the tax evasion statute requires that we prove a substantial tax deficiency. So if we had indicted the case in Ohio we'd still have the issue of proving the income that he earned in Pennsylvania and proving the evasive acts that he took.

App. at 533–34. The exchange then continues with the AUSA arguing that Root is not contesting venue, and that since "the indictment charges evasive acts occurred in this district[,] that's the end of the inquiry for venue purposes." *Id.*

Although I do not want to unfairly impute a meaning that was not intended, it is exceedingly difficult to read that exchange and conclude anything other than that the Government combined acts over the years in the same count to aggregate Root's total tax deficiency and thereby facilitate proving that it was substantial.[19] Generally

17. I have calculated these amounts using the "CPI Inflation Calculator" on the website of the Bureau of Labor Statistics, which is part of the U.S. Department of Labor. *See* http://www.bls.gov/data/inflation_calculator.htm. The calculator is described by the BLS as follows: "The CPI inflation calculator uses the average Consumer Price Index for a given calendar year. This data represents changes in prices of all goods and services purchased for consumption by urban households. This index value has been calculated every year since 1913. For the current year, the latest monthly index value is used." http://www.bls.gov/cpi/cpicalc.htm. To ensure equivalent comparisons, I am comparing the amounts in the year of the tax deficiency. One might argue that the year in which the trial took place is more relevant because it better reflects jurors' current impressions of buying power. However, the dates of trials are not always clear from the facts recited in opinions. The year of the tax deficiency is an accurate and appropriate basis for the calculation.

18. *Id.* Though the distinction may be obvious, it is important to note that the amounts as presented are not comparable. While *Davenport* addresses unpaid tax, *Gross* is citing to taxable income on which tax was not paid. Tax evasion requires a "substantial *tax deficiency*," which is calculated as a proportion of taxable income.

19. Given the defendant's Ohio residence, the fact that his companies were Ohio companies, and the fact that he derived substantial income through those Ohio companies from legal work he did in Ohio, it is a mystery why

speaking, there is certainly nothing wrong with strategically drafting an indictment in a manner that maximizes the likelihood of conviction or facilitates proof. However, there *is* something wrong when the result is a duplicitous indictment that exposes the defendant to conviction on less than a unanimous verdict.

Nevertheless, this case does not warrant reversal because, as the majority correctly points out, "[t]he record demonstrates Root evaded the assessment of more than $50,000 of income in each of the years in question." Maj. Op. at 154. Although the indictment and the jury charge do not appropriately segregate Root's conduct by year, "Root's evasive conduct was consistent during the three-year time period." *Id.* Moreover, when Root first filed amended returns in June 2004, he reported only the commission payments made to New Perspectives; he did not report the other income. Accordingly, no reasonable jury could have voted to acquit Root of evasion of assessment of tax for any of the years with which he was charged in Count Two. Similarly, the record reflects sufficient activity in the Eastern District of Pennsylvania to establish venue in that district.

As I noted at the outset, and as the majority explains, the doctrine of duplicity is intended to "avoid[ ] the ... risk that jurors may not have been unanimous as to any one of the crimes charged...." *Margiotta,* 646 F.2d at 733; *see also* Maj. Op. at 155. As I have also explained, *Shorter*

teaches that, absent appropriate jury instructions and/or special interrogatories that address the risk of conviction on less than a unanimous verdict as to each year in which evasion of assessment is charged, trial courts should not permit indictments (such as this one) that combine offense conduct across multiple tax years in a single count.[20] Ignoring that risk permits indictments that rest only "on the narrow basis of tax evasion law" to escape the more crucial step of "measur[ing] that indictment against the purposes of prohibition against duplicity" to ensure fairness. *Shorter,* 608 F.Supp. at 879.

## V. Venue

I agree with the majority that the "Government bears the burden of proving venue by a preponderance of the evidence and venue must be proper for each count of the indictment." Maj. Op. at 155. I also agree that tax evasion can be a continuing offense under 18 U.S.C. § 3237(a). *Id.* at 156. However, as I believe that it is duplicitous to combine multiple years of evasion of assessment into Count Two, I am *in dubitante* about the majority's conclusion that venue for Count Two of the indictment can rest on conduct in any one year.

Moreover, the majority's conclusion that "[t]he locality of a crime for the purpose of venue extends 'over the whole area through which force propelled by an of-

---

the Government decided to bring this indictment in the Eastern District of Pennsylvania rather than Ohio. However, that is a mystery that we do not need to solve, and it is one that cannot be solved on this record.

**20.** Although the Government now answers the question of whether Root suffered any prejudice by stating "there was no conceivable way" that the jury may have concluded Root only committed tax evasion in some but not all of the years, the risk was sufficiently

real to cause the Government to propose jury instructions to address that concern.

The Government requested the following as to how the jury should be instructed as to whether Root attempted to evade or defeat a tax: "The government need only to prove one act to satisfy this element of the offense, but you must unanimously agree on which act or acts were committed." Gov't Request No. 38, Proposed Jury Instructions at 60–61 (footnote omitted).

fender operates'" is troubling. *Id.* at 156 (quoting *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944)). The Supreme Court has held that where 18 U.S.C. § 3237(a) applies, for purposes of venue, a crime is "committed in all of the places that any part of it took place, and venue … [is] appropriate in any of them." *United States v. Rodriguez–Moreno,* 526 U.S. 275, 282, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). Yet, the Court made clear that it was not deciding whether "venue may also permissibly be based upon the effect of a defendant's conduct in a district other than the one in which the defendant performs the acts constituting the offense." *Id.* at 279 n. 2, 119 S.Ct. 1239. In *United States v. Johnson,* cited by the majority, the Court laid out the potential dangers of expanding venue:

> By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails … may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. Plainly enough, such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution. These are matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law…. Questions of venue in criminal cases, therefore, are not merely matters of formal

legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitution.

To balance such concerns, the Court of Appeals for the Second Circuit, for example, suggests that "when venue may properly lie in more than one district under a continuing offense theory, we should also ask 'whether the criminal acts in question bear "substantial contacts" with any given venue.'" *United States v. Ramirez,* 420 F.3d 134, 139 (2d Cir.2005) (quoting *United States v. Saavedra,* 223 F.3d 85, 93 (2d Cir.2000)). To determine whether "a chosen venue is unfair or prejudicial to a defendant," a court "takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Saavedra,* 223 F.3d at 93.

Ultimately, the facts of this case do not require or support a holding that is as broad as the one implied by the majority. Venue is appropriate here because Root evaded assessment on income from the Eastern District of Pennsylvania in each year for which he was charged.

## VI. Conclusion

It is important to stress that our judgment affirming this conviction should not obfuscate the fact that this indictment was drawn in a manner that created needless risks of a verdict that was not unanimous. Nevertheless, even though this indictment is clearly duplicitous and could have otherwise resulted in a denial of due process by depriving Root of the requirement of jury

unanimity, and even though bringing this prosecution in the Eastern District of Pennsylvania is certainly questionable, I join the judgment affirming the conviction for the reasons I have explained.