NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3917
_____

UNITED STATES OF AMERICA

v.

GERARDO FERNANDEZ,
                              Appellant


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 08-cr-00673)
District Judge: Honorable Anne E. Thompson


_____

Argued June 29, 2010
Before: SLOVITER, BARRY and HARDIMAN, *Circuit Judges.*

(Filed: July 21, 2010)

Norman Gross [Argued]
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street
P.O. Box 2098, 4th Floor
Camden, NJ 08101-0000

George S. Leone
Samuel A. Stern
Office of United States Attorney
970 Broad Street
Room 700

Newark, NJ 07102-0000
        *Attorneys for Appellee*

Nicholas C. Harbist [Argued]
Blank Rome
210 Lake Drive East
Suite 200, Woodland Falls Corporate Park
Cherry Hill, NJ 08002-0000
        *Attorney for Appellant*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Gerardo Fernandez was indicted on one count of perjury in violation of 18 U.S.C. § 1623(a) and one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2). A jury found Fernandez guilty of the former charge and not guilty of the latter charge. On appeal, Fernandez raises several claims of error in his indictment, trial, and sentencing. We will affirm.

I.

Because we write for the parties, who are familiar with the facts and procedural history of the case, we recount only that which is essential to our decision.

In June 2006, the FBI and a federal grand jury sitting in Trenton, New Jersey began investigating public corruption in Passaic, New Jersey. As part of its investigation, the FBI incorporated a dummy insurance company, Coastal Solutions, which was used to bribe local politicians including Passaic City Councilman Jonathan Soto. Soto

2

represented that he could steer insurance contracts from the Passaic City Council (Council) to Coastal Solutions and indicated to an FBI informant that some of the bribes had gone to two other local politicians: Mayor Samuel Rivera and Councilman Marcellus Jackson.

As part of the scheme to steer insurance business to Coastal, Soto lobbied against resolutions on the Council's March 22, 2007 agenda that would have awarded insurance contracts to another company, Brown & Brown. At this time, Fernandez was also a member of the Council.

At 5:07 p.m. on March 22, two hours before the start of the meeting, Soto placed a call to Fernandez's cell phone to discuss the vote. The call was intercepted by a wiretap the FBI had placed on Soto's cell phone. During the conversation, Soto told Fernandez that: Rivera had informed Soto, Jackson and another council member, Joe Garcia, that "he doesn't want Brown & Brown to go through"; Rivera told Soto to "vote down Brown and Brown" and Soto agreed to do so; and Rivera directed Soto to "reach out to Gerry [Fernandez]." App. at 152. Soto also told Fernandez that they were going to vote against the Brown & Brown resolutions to save the City money. *Id*. at 153. Fernandez responded "[t]hat's right." *Id*. At the end of the call, Fernandez said "I'll give Sammy [Rivera] a call to let him [know] that I know what's going on." *Id*. at 154. Immediately after speaking with Soto, Fernandez placed a call to Rivera, which was not recorded. App. at

3

330-31. Both of the Brown & Brown resolutions were defeated at the March 22 meeting, with Soto, Jackson, Garcia, and Fernandez voting against them.

In September 2007, Rivera, Soto, and Jackson were arrested by federal law enforcement officials for their involvement in the bribery scheme. After the arrests, the grand jury subpoenaed Fernandez to testify on November 14, 2007. During his testimony, Fernandez denied speaking with anyone about the March 22, 2007 vote. Specifically, Fernandez testified that he had never discussed insurance matters pending before the City Council with Soto or Rivera, by telephone or otherwise. When asked whether he would recall a discussion with Soto about insurance matters, Fernandez replied: "Absolutely. I would have slapped him. . . . Because I don't tell anybody how to vote. I don't want anybody telling me how to vote either." App. at 25, 1015. Fernandez was subsequently indicted on one count of perjury and one count of obstruction of justice based on his grand jury testimony.

At trial, Fernandez testified in his own defense. The thrust of his defense was that he did not knowingly lie to the grand jury. Fernandez averred that he had forgotten about the March 22 calls for various reasons, including that: he received numerous phone calls every day and was a busy person, the call from Soto was not memorable because it lasted only two minutes and merely repeated information Fernandez had already learned at City Council meetings, and Fernandez had no reason to lie to the grand jury because he was

4

not involved in the underlying bribery scheme. The jury found Fernandez guilty of perjury but not guilty of obstruction of justice.

At sentencing, the District Court applied a two-level enhancement for obstruction of justice pursuant to § 3C1.1 of the United States Sentencing Guidelines (USSG or Guidelines); as a result, Fernandez faced a Guidelines range of 21 to 26 months imprisonment. The District Court varied downward and imposed a sentence of 18 months imprisonment. Fernandez filed this timely appeal, in which he raises numerous issues regarding the validity of his indictment, evidentiary rulings made by the District Court, the jury instructions, and the application of the two-point obstruction of justice enhancement.[1]

## II.

### A. The Indictment

Before trial, Fernandez moved to dismiss his indictment, arguing that it was impermissibly ambiguous and duplicitous. We exercise plenary review over the District Court's legal conclusions in denying the motion and review the Court's factual findings for clear error. *United States v. Barbosa*, 271 F.3d 438, 469 (3d Cir. 2001).

Fernandez claims that the questions posed to him before the grand jury could not support perjury charges because they were fundamentally ambiguous. Although a trial

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. § 3742(a).

court has the power to dismiss a perjury count when the prosecutor's questions are fatally ambiguous, *see United States v. Serafini*, 167 F.3d 812, 820 (3d Cir. 1999), this is not such a case. "[T]he existence of 'some ambiguity' in a falsely answered question is generally not inconsistent with a conviction for perjury." *United States v. Camper*, 384 F.3d 1073, 1076 (9th Cir. 2004) (citation omitted). Rather, in instances of less than fundamental ambiguity, "it is for the petit jury to decide which construction the defendant placed on the question." *Serafini*, 167 F.3d at 820 (internal quotation marks and citation omitted).

It is clear from the context of the questions and the record as a whole that Fernandez understood what the prosecutor was asking him. Though advised at the start of his grand jury appearance that "during the course of the questions and the course of this proceeding today, if you have any questions or any confusion about any questions, you'll let us know[,]" App. at 978, Fernandez never indicated that he was confused by any of the questions to which he allegedly responded falsely. Moreover, Fernandez unequivocally denied that he received any phone calls relative to the insurance resolutions prior to the vote on March 22, and in denying that he had a discussion with Soto regarding the insurance matters, Fernandez insisted that he would have remembered such a discussion. *See United States v. Long*, 534 F.2d 1097, 1100 (3d Cir. 1976).

6

The fact that questions could have been more specific is not evidence of fundamental ambiguity; thus, any argument that Fernandez did not understand the questions to which he was responding was one for the jury.

Fernandez also argues that Count I of the indictment should have been dismissed as duplicitous "because the Government charged multiple false statements in the same count involving the same subject." The District Court denied Fernandez's motion to dismiss the indictment in this regard, opting to resolve any issues by charging the jury that a verdict of guilty on Count I required unanimity as to at least one perjurious statement. Fernandez contends that the unanimity instruction was inappropriate because such an instruction is proper only when a duplicity challenge is first raised at trial. Because Fernandez argued duplicity prior to trial, he claims the only appropriate remedies were election or dismissal. "Whether an indictment is duplicitous is a question of law subject to *de novo* review." *United States v. Root*, 585 F.3d 145, 150 (3d Cir. 2009).

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). Duplicity is not to be confused with "multiplicity," which is the charging of a single offense in several counts thereby risking multiple punishments for a single crime. 1A Charles Alan Wright *et al.*, Federal Practice and Procedure § 142 (4th ed. 2010). The purposes of the prohibition against duplicitous indictments include:

> (1) avoiding the uncertainty of whether a general verdict of guilty conceals
> a finding of guilty as to one crime and a finding of not guilty as to another;

7

(2) avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and (5) protecting against double jeopardy in a subsequent prosecution.

*Root*, 585 F.3d at 154.

"Duplicitous pleading, however, is not presumptively invalid." *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006). The charging of separate acts in one count is permissible "if those acts could be characterized as part of a single continuing scheme." *Id*. (quotation omitted). This rule makes an abundance of sense in perjury cases where the same falsehood could be repeated in several ways. In such circumstances, charging each statement separately could lead to a multiplicity challenge. *See, e.g.*, *United States v. Clarridge*, 811 F. Supp. 697, 705 (D.D.C. 1992) (two counts of an indictment alleging false statements before Senate Committee were multiplicitous even though they were responses to different questioners where the "statements were given pursuant to one oath, they were made before the same committee on [the same day], and they pertained to identical subject matter"). Thus, courts have held that perjury indictments are not duplicitous simply because they specify multiple statements demonstrating the same falsehood. *See, e.g., United States v. Berardi*, 629 F.2d 723, 729 (2d Cir. 1980) ("[I]t has long been accepted practice to charge perjury before the grand jury, committed in the course of the same appearance, in a one count indictment with each false declaration set forth in a particular specification."); *United States v. Isaacs*, 493 F.2d 1124, 1155 (7th Cir.) ("In perjury cases . . . where one offense is committed, all the false declarations

8

pertaining to that offense can be charged in one count without making that count duplicitous."), *cert. denied*, 417 U.S. 976 (1974).

Accordingly, Count I of Fernandez's indictment, which specified multiple falsehoods all regarding whether Fernandez spoke with anyone about the insurance resolutions prior to the vote, was not duplicitous.[2]

## B.  Evidentiary Rulings

The primary focus of Fernandez's defense at trial was to disprove that he had "knowingly" lied to the grand jury.  According to Fernandez, he had merely forgotten about the March 22 phone calls by the time of his grand jury testimony.  On appeal, Fernandez challenges three instances in which the District Court excluded evidence offered to corroborate Fernandez's state of mind during his grand jury testimony.

We review a trial court's decision to admit or exclude evidence for abuse of discretion, "and such discretion is construed especially broadly in the context of Rule

---

[2] Fernandez also claims that the jury instruction regarding unanimity impermissibly amended the indictment.  After thorough consideration of this issue—which is subject to the onerous plain error standard because Fernandez failed to raise it before the District Court—we find no error.  Even assuming the instruction constituted a constructive amendment of the indictment, it was not impermissible because it did not "broaden[] the possible bases for conviction from that which appeared in the indictment." *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (quotation omitted).  The District Court did not permit the jury to consider statements beyond those included in the indictment; accordingly, Fernandez had full notice of the charges and statements against which he needed to defend and his Fifth Amendment rights were not violated. *See also United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002) ("A constructive amendment occurs where a defendant is deprived of his 'substantial right to be tried only on charges presented in an indictment returned by a grand jury.'" (citation omitted)).

403." *United States v. Mathis*, 264 F.3d 321, 326-27 (3d Cir. 2001). A district court's decision to exclude evidence under Rule 403 constitutes an abuse of discretion only where it is "arbitrary or irrational." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc). If we conclude that an evidentiary ruling constituted an abuse of discretion, we must determine whether the error was harmless. *United States v. Casoni*, 950 F.2d 893, 902 (3d Cir. 1991).

1.

At trial, Fernandez sought to introduce audiotapes of telephone calls between Soto, Rivera, and Jackson which took place earlier in the day on March 22, 2007. In those calls, Soto, Rivera, and Jackson discussed whether to cut Fernandez in on the bribery scheme to secure his vote against the upcoming insurance resolutions. Ultimately, the three concluded that, instead of cutting Fernandez in, Soto would call Fernandez and tell him to vote against the resolutions to save the City money. In seeking to admit the tapes into evidence, Fernandez argued they corroborated his testimony that he had no motive to mislead the grand jury.

The District Court excluded the audiotapes, finding that they were irrelevant, and constituted impermissible hearsay. The Court noted the unreliability of the statements given the motivations of the parties to the conversation. It also found that playing the tapes would be "a distraction" because Fernandez was not accused of membership in the bribery conspiracy and his case dealt with the "very narrow" perjury issue, which the

10

Court would not allow to be "obfuscated by bringing in schemes and cross agendas of others." App. at 312-13.

Under Federal Rule of Evidence 403, a District Court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The audiotapes of the March 22 telephone calls between Soto, Rivera, and Jackson were largely irrelevant to the case. Fernandez was not charged with participation in the underlying bribery scheme and the Government conceded that it had no evidence he was involved. Furthermore, though the Government referred to Fernandez as a "friend" of Mayor Rivera in its opening statement, its theme throughout trial was that Fernandez was motivated to lie, not because he was a close personal friend of Rivera, but because it was politically expedient for Fernandez to curry favor with Rivera. The fact that Rivera, Soto and Jackson considered and rejected the idea of including Fernandez in their scheme does not tend to negate the Government's theory. Therefore, the tapes had minimal probative value.

Moreover, the potential for "obfuscation" from the admission of evidence regarding the corruption conspiracy was high, and the District Court instructed the jurors that they could not apply guilt by association to Fernandez based on the underlying

11

extortion crime. App. at 772. Therefore, the District Court's conclusion that the danger of confusion and prejudice from playing the audiotapes substantially outweighed their probative value was not an abuse of discretion.

2.

Fernandez next assigns error to the exclusion of audiotapes and transcripts of prior Council meetings during which the Council discussed the insurance resolutions and the need to save the City money. The District Court's statement that the tapes were irrelevant to the perjury charge was incorrect, as they did tend to show that the reason Fernandez did not recall the March 22 phone call with Soto was because it was an "unremarkable discussion" reiterating information Fernandez had already learned in the Council meetings. Contrary to the Government's assertions, Fernandez did develop this argument at trial and in his proffer of the tapes.

Nonetheless, the District Court's conclusion that the tapes were repetitive of uncontested information already presented through the testimony of Gregory Hill, the City's Business Administrator, and through Fernandez's own testimony, was not improper. App. at 509-11. Fernandez proffered multiple audiotapes of full Council meetings, each twenty to forty minutes in length, and numerous pages of transcripts to corroborate undisputed testimony. *See* App. at 410, 523. The Court was legitimately concerned that such evidence would be a waste of time. App. at 509-511, 515. Thus, the conclusion that any probative value of the tapes was substantially outweighed by their

cumulative effect was not an abuse of discretion, particularly where the Court permitted

Fernandez to submit the meeting minutes and agendas as an alternative, which he did.

Fed. R. Evid. 403; *see* App. at 499-500, 519, 521, 534, 580-81.[3]

## C. Jury Instructions

Fernandez asserts four errors with respect to the jury instructions. He argues that

the District Court erred by: (1) failing to define the term "knowingly" with respect to the

perjury count; (2) refusing to give Fernandez's proposed "ambiguity" instruction; (3)

instructing the jury that a prosecutor is not obligated to give grand jury witnesses advance

notice of the subject matter of the investigation; and (4) improperly instructing the jury as

to "materiality." "We generally exercise plenary review in determining 'whether the

jury instructions stated the proper legal standard,' and review the refusal to give a

particular instruction or the wording of instructions for abuse of discretion." *United

States v. Flores*, 454 F.3d 149, 156 (3d Cir. 2006) (citation omitted).

---

[3] We also reject Fernandez's claim that the District Court erred when it permitted the Government to question him regarding what his lawyer told him about the scope of the grand jury investigation. The Government's questions did not violate the attorney-client privilege because Fernandez repeated only what his attorney had learned from the prosecutor and the conveyance of such information does not constitute privileged legal advice. *See In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." (quotation omitted)); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (underlying facts do not become privileged via incorporation in an attorney-client communication). We also conclude that Fernandez suffered no harm when his attorney was precluded from testifying.

Fernandez's argument with respect to the Court's knowingly charge is borderline frivolous. Though the District Court did not define the term "knowingly" immediately following its instruction concerning the elements of perjury, it did define the term after it had set out the elements of obstruction of justice, App. at 767-68, and further instructed the jury that the definition applied wherever "knowingly" appeared among the elements of either offense, App. at 874. These instructions "fairly and adequately submit[ted] to the jury" the definition of knowingly for Count I. *United States v. Traitz*, 871 F.2d 368, 383 (3d Cir. 1989).

The District Court's refusal to give Fernandez's ambiguity instruction also was not an abuse of discretion because the Court charged the jury properly as to the elements of perjury and the burden of proof necessary to convict Fernandez. This included instructing the jury that one did not make a knowing falsehood if the statement was based on mistake. App. at 767. Furthermore, Fernandez's proposed instruction incorporated the issue of fundamental ambiguity which is a question for the court, not the jury.

The District Court instructed the jury that "[t]he Government is under no requirement to inform a witness in the Grand Jury of the extent or breadth of the Government's investigation. Or to tell him of the evidence it already possesses or that it already has regarding the subject matter." App. at 764. This instruction neither misstated the law nor discouraged the jury from considering Fernandez's argument about the effect of the lack of information on his state of mind. Given the numerous implications made by

14

the defense during trial that the prosecutor improperly failed to provide Fernandez with advance notice of the scope of the investigation, this instruction was not an abuse of discretion. *See, e.g., Edwards v. City of Phila.*, 860 F.2d 568, 575 (3d Cir. 1988).

Finally, Fernandez assigns error to the Court's materiality instruction because it failed to state that a material statement is one on which "a reasonable person would rely." This argument is meritless because the materiality instruction that the Court did provide—that "[a] statement is material if it has a tendency to influence, impede or hamper the Grand Jury from pursuing [its] investigation," App. at 763—was consistent with controlling precedent. *See, e.g., United States v. Gaudin*, 515 U.S. 506, 509 (1995) ("[C]onviction under [18 U.S.C. § 1001 false statements] requires that the statements be 'material' to the Government inquiry . . . [t]he statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it is addressed." (citation omitted)).

## D. Sentencing Challenge

Fernandez challenges the District Court's application of a two-level enhancement under USSG § 3C1.1 for obstruction of justice. We exercise plenary review over the District Court's interpretation of the Guidelines, and review its findings of fact in support of an enhancement for clear error. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).

Fernandez's Presentence Investigation Report (PSR) found the enhancement appropriate based on his testimony at trial "that he had no recollection of the March 22, 2007 telephone call with Jonathan Soto." At sentencing, the District Court agreed that Fernandez had perjured himself at trial: "[h]aving taken that position in the Grand Jury, and feeling that he was not a wrongdoer in all of this corruption, as I view it, Mr. Fernandez could not bring himself to step away from the position he had taken." App. at 939. Because the District Court did not further explain its application of § 3C1.1, the Government initiated the following exchange at the close of the sentencing hearing:

> MR. CHAO: And, Your Honor, if I just may clarify because with respect to the obstruction enhancement, did the Court find by a preponderance that defendant's testimony at trial constituted false testimony?
>
> THE COURT: Absolutely.
>
> MR. CHAO: Concerning material matter with the willful intent to provide false testimony.
>
> THE COURT: Yes, I believe that the defendant took the position he took early on and could not bring himself to waiver [sic] from it.

App. at 945-46.

Fernandez argues that application of the enhancement constituted improper double counting because his underlying offense was for perjury and the Government failed to show a "significant further obstruction" as required by the Application Notes to § 3C1.1. *See* USSG § 3C1.1 cmt. n.7.

Section 3C1.1 provides for a two-level enhancement:

16

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct . . . .

USSG § 3C1.1. Application Note 7 cautions that if the offense of conviction is perjury (among other crimes), then the enhancement should not be applied "except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself," and lists threatening a witness as an example of "significant further obstruction." USSG § 3C1.1 cmt. n.7.

We have held that the commission of perjury at trial warrants application of the obstruction of justice enhancement. *United States v. Fiorelli*, 133 F.3d 218, 221 (3d Cir. 1998); *see also* USSG § 3C1.1 cmt. n.4(b) (including "committing . . . perjury" on "list of examples of the types of conduct to which this enhancement applies"). Moreover, we have rejected the argument that perjurious statements at trial must cause the government some additional burden in order to support a § 3C1.1 enhancement. *See Fiorelli*, 133 F.3d at 223 (holding that perjury need not be "so far reaching as to impose some incremental burdens on the government" to constitute obstruction under § 3C1.1 (internal quotation marks omitted)); *see also United States v. Dunnigan*, 507 U.S. 87, 93 (1993) (precedents requiring "some greater design to interfere with judicial proceedings . . . arose in the context of interpreting early versions of the federal criminal contempt statute" not § 3C1.1). While these cases dealt with underlying convictions for crimes which did not

17

trigger Application Note 7, they are nonetheless instructive that perjury at trial constitutes obstruction of justice under § 3C1.1.

Like the Court of Appeals for the District of Columbia Circuit, "[w]e are reluctant to hold that Note 7 gives a defendant license to perjure [himself] in a criminal proceeding in order to avoid enhanced punishment for, of all things, perjury." *United States v. McCoy*, 316 F.3d 287, 289 (D.C. Cir. 2003) (rejecting contention that "[s]imply repeating precisely the same statements that were the subject of perjury charges is not the sort of 'significant further obstruction' that can justify an exception to Application Note 7's general rule against applying obstruction enhancements to perjury convictions" (internal quotation marks omitted)). Thus, Fernandez's perjury at trial constitutes a "significant further obstruction" during the prosecution of his perjury before the grand jury. Contrary to Fernandez's arguments, this does not constitute "double counting." Fernandez was convicted of perjury before the grand jury, and the enhancement was based on his perjury at trial. As noted in the PSR, these were "separate and distinct" instances of lying; there is no free pass for consistent perjury. Therefore, the enhancement was warranted in this case.

Fernandez also assigns error to the District Court's failure to make specific findings in support of the enhancement. While it is true that the District Court's discussion of the elements of perjury was less than ideal (as evidenced by the Government's attempt to shore up the Court's findings at the end of the sentencing

18

hearing), this is not a basis for vacating application of the enhancement where it is supported by the record and jury's verdict. As we stated in *United States v. Boggi*:

> [W]e stress that it is preferable for a district court to specifically state its findings as to the elements of perjury on the record when applying this enhancement. However, where, as here, the record establishes that the district court's application of the enhancement necessarily included a finding as to the elements of perjury, and those findings are supported by the record, we will not remand merely because the district court failed to engage in a ritualistic exercise and state the obvious for the record.

74 F.3d 470, 479 (3d Cir. 1996).

Moreover, in *United States v. Gricco*, we upheld a § 3C1.1 enhancement based on perjury even though the district court did not specifically identify which statements were perjurious, observing only that Gricco "testified falsely regarding material matter during trial." 277 F.3d 339, 362 (3d Cir. 2002). We affirmed application of the enhancement in *Gricco*, despite the lack of specific findings by the sentencing court, because it was "obvious" from the record "that [the defendants]-both of whom denied any participation in embezzling the money from the airport and in underreporting their income-committed perjury." *Id*.

The same is true here. At trial, Fernandez repeatedly explained that the reason he denied the existence of the March 22, 2007 phone calls when answering questions before the grand jury was because he did not remember the calls, *see, e.g.,* App. at 563-567; he also asserted, during his trial testimony, that he testified truthfully before the grand jury, App. at 543, 604-05. The veracity of these statements was necessarily rejected by the

19

jury's verdict, finding that Fernandez willfully made false statements to the grand jury. In light of the record, it was not error for the District Court to conclude that these statements constituted willful, material falsehoods warranting an enhancement under § 3C1.1.

## III.

For the foregoing reasons, we will affirm Fernandez's judgment of conviction and sentence.